IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>TOTAL VEIN SOLUTIONS, LLC,<br><br>      Defendant. | CIVIL ACTION NO. 04CV10686 NMG |

**DIOMED'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY RESPONSES AND DEPOSITIONS**

This is a patent infringement action brought by Diomed, Inc. ("Diomed") against Total Vein Solutions, LLC ("TVS"), a low-cost supplier of products for use in Diomed's patented endovenous laser procedure for treatment of varicose veins. The case was filed in April 2004, and was assigned to Judge Stearns. Following Judge Stearns's recusal in June 2006, the case was reassigned to this Court.

The case is critical to Diomed because TVS is a low-cost provider that has stolen market share and caused dramatic price erosion in the marketplace, resulting in significant and irreparable damage to Diomed. These activities have recently increased in scope and magnitude, requiring Diomed to expedite discovery and, ultimately, resolution of the case.

Following an initial round of discovery in early 2005, including a series of depositions of TVS's principals in August 2005, discovery in this matter, while ongoing, fell behind that of the parallel consolidated litigation involving defendants AngioDynamics and Vascular Solutions (consolidated at Civil Action No. 04-0019) ("AngioDynamics Litigation"). The schedule Judge Stearns set for the AngioDynamics Litigation was more aggressive than the schedule for this litigation.

Nevertheless, Diomed continued to pursue discovery from TVS. In particular, in April 2006 Diomed served a second set of discovery requests on TVS, and indicated its intention to conduct additional depositions of TVS personnel. Importantly, much of the noticed discovery was not *new* discovery but rather an attempt to complete discovery that was begun in 2005, but which had been impeded by third-party objections.

### A.      Discovery Withheld Based on Third-Party Objection

One of the principals of TVS, Mr. David Centanni, refused to answer a number of questions at his August 2005 deposition on the grounds that they implicated a confidentiality obligation to his former employer, Dornier MedTech America, Inc. ("Dornier"). By way of example, Mr. Centanni admitted to learning of the Diomed patent during his employment at Dornier, and *before starting TVS*, but refused to answer questions about the circumstances under which he gained this knowledge – information that is highly relevant to inducement to infringe and willful infringement, among other issues. See Centanni Depo., pp. 102-104; 243-245 (Exhibit A to the accompanying Declaration of Michael N. Rader).[1]

A Dornier attorney attended that deposition and refused to permit Mr. Centanni to answer such questions on confidentiality grounds, despite the fact that Judge Stearns had earlier entered a Protective Order (D.I. 19) permitting the parties to designate sensitive information as CONFIDENTIAL or even ATTORNEYS' EYES ONLY. Apparently fearing reprisal by Dornier, Mr. Centanni's counsel repeatedly instructed him not to answer various lines of deposition questioning to which the Dornier attorney objected. E.g., Centanni Depo. at 102-104; 195-199; 243-245.

---

[1] Mr. Centanni also refused to provide testimony on numerous other topics, such as the endovenous laser ablation training sessions that he attended while he was employed by Dornier. This information too is highly relevant to infringement and willfulness. (Id. at pp. 195-199).

Diomed's understanding is that TVS does not object to Mr. Centanni answering such questions, but would simply prefer to do so under court order in light of Dornier's threats. Given the confidentiality protections applicable in this case, and the parties' apparent agreement that the requested testimony may properly be provided, Diomed respectfully suggests that the Court should issue an Order compelling Mr. Centanni to testify.

B.  **Discovery Withheld As a Delay Tactic**

In response to Diomed's second set of discovery requests served in April 2006, TVS raised a new objection. TVS indicated a preference to forestall all discovery in this case until the AngioDynamics Litigation has been fully resolved. The fact that the two cases involve the same patent, however, does not justify TVS's objection to answering Diomed's properly served discovery. Indeed, in the end TVS has proven itself *not* to be serious about stalling the case.

On April 13, 2006, Diomed put in writing a request for response to outstanding discovery requests, calling TVS's attention to specific document requests, interrogatories and depositions that required attention. The letter included, but was not limited to, information withheld due to Dornier's objections. (Rader Decl. Ex. B). In early May 2006, TVS's counsel responded that TVS did not intend to provide the requested discovery, but instead would file a motion to stay the case entirely. (Rader Decl. ¶ 4). TVS reiterated its position in writing on May 18, 2006 in its objections to Diomed's second set of discovery requests, calling them "unduly burdensome" and "wasteful" in light of TVS's "soon-to-be filed motion to stay this case." (Rader Decl. Ex. C at p. 3 ¶ 14 and Ex. D at p. 3 ¶ 11).

TVS never filed its threatened motion to stay.

In December 2006 and January 2007, Diomed reiterated its request for discovery (Rader Decl. Ex. E) and made a good faith effort to reach a compromise solution that would not require intervention by the Court – for example, limiting the number of depositions to be taken and offering to complete each in a half day (Rader Decl. Ex. F).  In response, on January 18, 2007, TVS rejected the compromise proposal and indicated – once again – that it would instead "apply to the Court for a formal stay." (Rader Decl. Ex. G).  As before, however, TVS has declined to file such a motion.  The Court should in any event reject a stay request if one is made in response to this motion to compel.

This case should proceed, and TVS should be ordered to provide the discovery to which it has already conceded that Diomed is entitled.

By refusing to respond to Diomed's discovery requests, TVS is in violation of Fed. R. Civ. P. 30, 33, and 34.  Diomed requests that the Court order TVS to meet its discovery obligations.

## ARGUMENT

Diomed's discovery requests fall well within the traditional bounds of patent litigation discovery.  Diomed is merely trying to discover evidence, such as Mr. Centanni's knowledge of the asserted patent, that goes directly to the issue of inducement to infringe and willfulness.  Diomed's more recent discovery requests likewise are aimed at discovering information, such as TVS's marketing materials, related to TVS's inducement of its customers to infringe of the asserted patent.  The same is true of the depositions that Diomed seeks to take.  Diomed requested, through TVS's attorneys, dates on which certain TVS employees who have sold or marketed TVS's products are available – discovery which is calculated to show how TVS induces doctors at these trade shows to infringe the asserted patent.

TVS's sole objection to providing substantive responses to Diomed's most recent discovery requests is that the discovery is "unduly burdensome and wasteful of party resources, in light of TVS'[s] soon-to-be filed motion to stay this case pending the resolution of the earlier-filed" AngioDynamics Litigation. (Rader Decl. Ex. C at p. 3 ¶ 14 and Ex. D at p. 3 ¶ 11). However, even TVS itself apparently does not take this notion seriously; despite repeatedly making the threat, it has filed no such motion.

Every day that TVS delays the outcome of this case by refusing to meet its discovery obligations adds to the irreparable harm to Diomed. Because TVS did not have to pay for any of the initial research done to perfect the method described in the '777 patent, nor license the '777 patent from its inventors, TVS is able to substantially undercut market prices.

TVS's business model is to then trade off of Diomed's investment and good will by selling heavily discounted products specifically designed and marketed to be used in a manner that infringes the '777 patent. This predatory pricing strategy permanently deflates the market price, and Diomed's price must follow the market to compete, leading to irreparable harm to Diomed. Rosen Entm't Sys., LP v. Eiger Vision, 343 F. Supp. 2d 908, 920-21 (C.D. Cal. 2004) (finding irreparable harm based on "price gouging").

In addition, for every customer that Diomed loses to TVS, it is losing market share. B.F. Goodrich FlightSystems, Inc. v. Insight Instru. Corp., 22 U.S.P.Q.2d. 1832, 1844 (S.D. Ohio 1992) (finding irreparable harm based lost market share: "Once you lose a customer, he's gone forever."). Discovery in this case must proceed so that the case can be resolved on the merits.

The refusal to cooperate in discovery in this case is particularly egregious because TVS has agreed that the discovery Diomed wishes to take is proper and appropriate for a patent litigation. The current stalemate is the result of a stall tactic.

With regard to the information in which Mr. Centanni's former employer Dornier claims confidentiality, several years have passed since Mr. Centanni left Dornier's employ. Accordingly, any purported trade secrets contained in the materials are likely extinguished. Estee Lauder Co. Inc. v. Batra, 40 F. Supp. 2d 158, 180 (S.D.N.Y. 2006) (recognizing that confidential information is only competitively valuable for limited lengths of time). In any event, to the extent any of the information is sensitive enough to warrant the concern that Dornier has attached to it (something that Diomed doubts and, as far as Diomed can tell, so does TVS), the materials can be designated as CONFIDENTIAL – ATTORNEYS' EYES ONLY pursuant to the Protective Order in this case, thus obviating Dornier's objection.

## CONCLUSION

For the above reasons, Diomed respectfully requests the Court order TVS to comply with the following discovery obligations:

1. Provide complete answers to Diomed's Interrogatory Nos. 23 & 24, served on April 13, 2006 (see Rader Decl. Ex. D)[2];

2. Produce documents responsive to Diomed's Second Set of Document Requests, served on April 13, 2006 (see Rader Decl. Ex. C);

3. Provide, pursuant to Fed. R. Civ. P. 26(e), an updated production of documents responsive to Diomed's First Set of Document Requests, served on November 17, 2004 (Rader Decl. Ex. H), with particular emphasis on Request Nos. 4, 7, 9, 11, 13, 14, 17, 18, 22, 23, 25, 26, 36, 37, 40, and 45.

4. Produce any documents that TVS has withheld due to objections by a third party; and

5. Produce the following TVS employees for deposition: David Centanni, Tina Clemens, Sopon Udompongusk, Randy Puddo, Kayla Garcia (Osenbaugh), Linda Kirshbaum, and Jeff Poortz.

---

[2] Interrogatory No. 23 seeks a list of products purchased by each TVS customer. After investigating the issue, TVS acknowledged on August 24, 2005 that its computer system "may be capable of" providing this information, "but it is not something that can be provided on short notice." (Centanni Depo., pp. 9-10). Interrogatory No. 24 merely seeks an identification of TVS's past and present employees and consultants.

Respectfully submitted,

DIOMED, INC.

By its attorneys,

Dated: January 30, 2007

/s/ Michael N. Rader
Michael A. Albert (BBO #558566)
malbert@wolfgreenfield.com
Michael N. Rader (BBO #646990)
mrader@wolfgreenfield.com
John L. Strand (BBO #654985)
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

**CERTIFICATE OF SERVICE**

I certify that this document and its accompanying papers, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Michael N. Rader