UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TOTAL VEIN SOLUTIONS, LLC,<br><br>    Defendant. | Civil Action No. 04-10686 NMG |

**TOTAL VEIN SOLUTIONS'S OPPOSITION TO DIOMED'S MOTION TO
COMPEL AND CROSS-MOTION TO STAY THIS CASE PENDING RESOLUTION
OF DIOMED'S LAWSUITS AGAINST ANGIODYNAMICS AND NEW STAR LASERS**

Defendant Total Vein Solutions, LLC, ("TVS") hereby opposes Diomed's Motion to Compel Discovery Responses and Depositions and moves for a stay of all proceedings in this action. Plaintiff Diomed, Inc. ("Diomed") is currently pursuing similar patent infringement actions in this district against Angiodynamics, Inc. ("Angiodynamics") and Vascular Solutions Inc. ("VSI") (consolidated as Case No. 1:04-cv-10019-NMG), as well as against New Star Lasers, Inc. ("CoolTouch") (Case No. 1:04-cv-12157-NMG). Each of these actions involve common disputed issues of fact, and the consolidated Angiodynamics/VSI action is now set for trial in March. As explained in greater detail below, a stay of further proceedings would conserve judicial and party time, resources and energy, while at the same time not working any substantial hardship upon Diomed.

For these reasons, this Court should deny Diomed's motion to compel additional discovery and grant TVS's cross-motion to stay this case, pending resolution of Diomed's claims against the above three larger defendants.

I.      **Procedural Background**

During the first quarter of 2004, Diomed filed two similar patent infringement actions against Angiodynamics and VSI, alleging infringement of Diomed's U.S. Patent No. 6,398,777 ("the '777 patent"). Diomed's '777 patent relates to certain claimed methods of treating a blood vessel using laser energy. In April of 2004, Diomed filed the present action against TVS. Later, in October of 2004, Diomed filed a patent infringement action against CoolTouch. Diomed's actions against Angiodynamics and VSI were later consolidated, but the actions against TVS and CoolTouch have remained separate. In April of 2005, this Court issued a claim construction order in the consolidated Angiodynamics/VSI action, construing certain disputed terms of the '777 patent. However, this order has not yet been adopted in the present litigation, and TVS as well as Diomed have reserved their rights to request additional claim construction as appropriate.

Some discovery has taken place in the present action. However, after the summer of 2005, TVS came to believe that Diomed and TVS had each implicitly chosen to conserve their resources and not pursue extensive discovery in this case. Accordingly, the present litigation remains in its early stages. It is believed that Diomed's action against CoolTouch is similarly situated. In contrast, the Angiodynamics/VSI litigation is now set for trial in March.

II.     **Brief Introduction to the Parties and Technologies**

Diomed is a leading supplier of a number of products and services relating to endovenous laser surgery. For example, Diomed employs a sizeable staff of approximately 80 individuals to sell physician training services, laser energy generating devices (hereafter "lasers"), vein viewers, disposable laser fibers, and certain other disposable devices used by physicians for endovenous laser surgery. Similarly, Angiodynamics and VSI also sell physician training, lasers, disposable laser fibers, and other disposable tools for endovenous laser surgery. *See* Ex. A.

In contrast, Defendant TVS does not attempt to train physicians or sell lasers. Rather, TVS sells disposable laser fibers and a number of convenient "procedure packs." TVS procedure packs include a number of common sterile components, including, for example, drapes, towels, sponges, ancillary products, needles and syringes, access devices, etc. The laser fibers sold by TVS may be used in conjunction with many lasers supplied by Angiodynamics, VSI and Diomed.

Like Angiodynamics and VSI, CoolTouch sells physician training, lasers, laser fibers, and possibly other disposable devices. *See* Ex. B. However, the CoolTouch laser are said to be critically different from the lasers sold by Diomed, Angiodynamics and VSI. In particular, the CoolTouch laser operates using laser energy having a wavelength of 1320 nm. *Id.* According to CoolTouch, the 1320 nm wavelength laser energy targets water in a patient's vein wall. *Id.* In contrast, the lasers supplied by Diomed, Angiodynamics, VSI and others operate using laser energy having wavelengths in the range of 810–980 nm. *Id.* These lasers are said to target the iron in hemoglobin, which is a component of a patient's blood. *Id.*

Market shares and other information concerning Diomed, Angiodynamics, VSI and CoolTouch are described in a page from Diomed's website attached as Exhibit C. In that page, Diomed describes TVS as a "minor participant" relative to Angiodynamics, VSI and CoolTouch. Ex. C.

### III.    Arguments and Authorities

A motion to stay proceedings is directed to the sound discretion of a court. *E.g., Kistler Instrumente A.G. v. PCB Piezotronics,* 419 F. Supp. 120, 123 (W.D.N.Y. 1976). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254 (1936).

A court should most likely stay proceedings where a stay would conserve judicial time, resources and energy. *See, e.g., Uniroyal, Inc. v. Sperberg,* 63 F.R.D. 55, 60 (S.D.N.Y. 1973). Relevant factors to be considered include the extent to which the controversies involve identical issues and parties, the likelihood that one of the actions will reach an earlier conclusion, and the relative ease of access to sources of proof. *See Rosenfeld v. Schwitzer Corp.,* 251 F. Supp. 758, 764 (S.D.N.Y. 1966).

### A.   A Stay Would Preserve Judicial and Party Time and Resources

A stay of proceedings in this action would preserve judicial time and resources in a number of important respects. First, it would allow key issues of direct infringement for the different laser technologies to be litigated by the particular parties best positioned to address them. Second, a stay would prevent the Court from being required to address certain difficult issues of privilege and waiver with respect to a third party laser supplier and potential infringement defendant, Dornier Medtech America, Inc. ("Dornier"). Last, it could very well eliminate the need for any further discovery and eventual trial involving the present case.

Diomed has taken the position throughout the present action that its '777 patent covers all commercially viable endovenous laser procedures used to treat varicose veins. In other words, as understood, the only way for physicians to successfully perform an endovenous laser surgical procedure to treat varicose veins is to perform the procedure in a manner that infringes the methods claimed in the '777 patent. Diomed takes this position, because there are various companies, including Angiodynamics, VSI and CoolTouch, that promote competing laser

technologies and techniques that are different in certain respects from the laser technology and techniques promoted by Diomed.

In the present case, Diomed alleges that TVS has indirectly infringed the '777 patent in two ways. First, as understood, Diomed contends that TVS has contributorily infringed the '777 patent by selling its laser fibers and procedure packs to physicians. *See* 35 U.S.C. § 271(c). Second, Diomed alleges, that TVS induces physicians to infringe the '777 patent by selling its laser fibers and procedure packs. *See* 35 U.S.C. § 102(b). Diomed's contributory infringement and inducement causes require, among other things, a showing of *direct* infringement by the actual physicians performing laser surgery using TVS supplied products. *See, e.g., C.R. Bard, Inc. v. Advanced Cardiovascular Sys.,* 911 F.2d 670, 673 (Fed. Cir. 1990). Additionally, contributory infringement requires a showing that the TVS laser fibers and procedure packs are not staple articles or commodities of commerce suitable for substantial noninfringing use. *See id.; Dynacore Holding Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1278 (Fed. Cir. 2004) (holding that accused infringer cannot be liable for indirect infringement for products capable of substantial noninfringing uses). In other words, if the accused TVS products can be used in a noninfringing manner by physicians using any of the endovenous laser technologies promoted by any of Angiodynamics, VSI or CoolTouch, there can be no finding of contributory infringement against TVS.

Thus, Diomed's present case against TVS will require Diomed to prove that the use of the competing laser technology and techniques of Angiodynamics and VSI must necessarily infringe the '777 patent. TVS respectfully submits that it would be wasteful and inefficient for both the Court and the parties to require TVS to litigate these two issues at this time. These two direct infringement issues will shortly be tried to a jury in the consolidated Angiodynamics/VSI

action. Further, Diomed's present case against TVS will also require Diomed to prove that the use of the competing laser technology and techniques of CoolTouch must necessarily infringe the '777 patent. TVS furthermore respectfully submits that it would also be wasteful and inefficient to require TVS to litigate CoolTouch laser direct infringement issues. Rather, TVS submits that interests of judicial efficiency strongly counsel that CoolTouch infringement issues should first be litigated by the most interested and best situated parties—CoolTouch and Diomed.

A stay of the present case will also preserve judicial resources by allowing the Court to defer potentially difficult issues of privilege and waiver with respect to Dornier.[1] TVS is a small company employing approximately eight individuals in Houston, Texas. Ex. D. ¶ 2. However, TVS's principal Mr. David Centanni was formerly employed by Dornier. *Id.* ¶ 3. Dornier is a supplier of lasers that may be used by physicians to perform endovenous laser procedures. *Id.* While employed by Dornier, Mr. Centanni was exposed to both Dornier proprietary information concerning Dornier's laser products and Dornier privileged communications relating to Dornier's view as to the proper scope of Diomed's '777 patent. Ex. D. ¶ 4.

As a former employee of Dornier, Mr. Centanni is contractually bound to maintain the confidentiality of Dornier's proprietary and privileged information. *See* Ex. E (letter from Dornier counsel to TVS counsel, reminding TVS of Mr. Centanni's confidentiality obligations). Further, Dornier has to date been adamant in preventing its proprietary and privileged information from being discovered by Diomed. *Id.*

Diomed argues, and TVS does not dispute, that in the event that discovery in this case moves forward, Diomed may be entitled to discover this information from Mr. Centanni. However, this case presents a unique situation. In the event that TVS decides to waive the

---

[1] Diomed has also described Dornier as a "minor participant." Ex. C.

attorney-client privilege and assert an advice of counsel defense to Diomed's charge of *willful* patent infringement, TVS will also be required to divulge privileged information that Mr. Centanni acquired while with Dornier. In other words, if this case moves forward, TVS may be forced to waive the attorney-client privilege for non-party and potential patent infringement defendant, Dornier.

Rather than bring this issue concerning non-party Dornier to a head, TVS respectfully suggests that a stay of the current proceedings is appropriate. In the event that the direct infringement issues with respect to the laser technologies of any of Angiodynamics, VSI or CoolTouch are resolved against Diomed, then Diomed would be bound by those determinations, and there would be no basis for Diomed's action against TVS. *See Grella v. Salem Five Cent Savings Bank,* 42 F.3d 28, 30 (1st Cir. 1994) (reciting elements establishing issue preclusion).

### B. A Formal Stay Will Not Cause Substantial Hardship

By Diomed's own admission, TVS is a minor participant in the endovenous laser procedure field. *See* Ex. C. While Diomed asserts hardship in a conclusory manner in its motion to compel, it provides no hard evidence that TVS's sales of its allegedly infringing laser fibers and procedure packs have caused substantial hardship. Rather, Diomed's decision early in this case to conserve resources and concentrate on its other pending infringement actions implicitly shows that the accused acts of infringement by TVS are of relatively little importance to Diomed's bottom line.

### C. Response to Diomed Requests for Discovery

TVS does not dispute that in the event the Court determines a stay of this proceeding is not appropriate, Diomed would be entitled to proceed with the discovery requested in its motion.

In such event, should Diomed wish to discover what Mr. Centanni may know concerning Dornier's laser-related activities, TVS would be willing to provide Mr. Centanni's testimony. However, TVS believes it must protect itself from potential contractual liability to Dornier. Thus, in the event the Court determines a stay of this proceeding is not appropriate, TVS believes it must insist upon (but will not oppose) an appropriate order from this Court.

## **CONCLUSION**

For the above reasons, the Court should deny Diomed's motion to compel and order that this case be stayed pending the resolution of *Diomed, Inc. v. Angiodynamics, Inc.,* Case No. 1:04-cv-10019-NMG and *Diomed, Inc. v. New Star Lasers, Inc.,* Case No. 1:04-cv-12157-NMG.

A proposed order is attached.

Date:  February 13, 2007          Respectfully Submitted,

TOTAL VEIN SOLUTIONS, LLC,
By its attorneys,

    /s/ Merton E. Thompson
Merton E. Thompson
BBO #637056
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000
Fax: (617) 345-3299

Barden Todd Patterson
(admitted *pro hac vice*)
Henry M. Pogorzelski
(admitted *pro hac vice*)
PATTERSON & SHERIDAN, LLP
3040 Post Oak Boulevard, Suite 1500
Houston, Texas 77056
Tel:  (713) 623-4844
Fax:  (713) 623-4846

>Craig V. Depew
>(admitted *pro hac vice*)
>CLARK, DEPEW & TRACEY, LLP
>4400 Louisiana, 16th Floor
>Houston, Texas  77002
>Tel: (713) 757-1400
>Fax: (713) 759-1217
>
>ATTORNEYS FOR DEFENDANT
>TOTAL VEIN SOLUTIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this *Total Vein Solutions's Opposition to Diomed's Motion to Compel and Cross-Motion to Stay This Case Pending Resolution of Diomed's Lawsuits Against Angiodynamics and New Star Lasers* to be served through the ECF system and by electronic mail upon the following counsel of record:

>Michael A. Albert
>Michael N. Rader
>John L. Strand
>WOLF, GREENFIELD & SACKS, P.C.
>600 Atlantic Avenue
>Boston, Massachusetts  02210
>Tel:  (617) 646-8000
>Fax:  (617) 646-8646
>
>ATTORNEYS FOR PLAINTIFF DIOMED, INC.

>   /s/   Merton E. Thompson

01104156

545064-1                         9