BURNS & LEVINSON LLP

125 SUMMER STREET BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
WWW.BURNSLEV.COM

March 6, 2007

*Via Hand Delivery*

The Honorable Judge Nathaniel M. Gorton
United Stated Federal District Court Judge
John Joseph Moakley U.S. Courthouse
1 Courthouse Way - Suite 2300
Boston, MA 02210

   RE: *Diomed, Inc. v. Angiodynamics, Inc.*, CA No. 04-10019; *Diomed, Inc. vs. Vascular Solutions, Inc.*, CA No. 04-10444 (consolidated under 04-10019).

Dear Honorable Judge Gorton:

  I write on behalf of interested party Total Vein Solutions, LLC ("TVS") with regard to the competing proposed jury verdict forms submitted by plaintiff Diomed and defendants Angiodynamics and Vascular Solutions in the above consolidated cases set for trial next week. TVS is a party to a similar patent infringement case pending before this Court, *Diomed, Inc. v. Total Vein Solutions, LLC*, CA No. 04-10686.

  TVS respectfully suggests that the special verdict form submitted by the defendants better serves the Court because it is likely to greatly conserve judicial time and resources by potentially eliminating the need to re-litigate common fact issues in the Total Vein Solutions case.

  The defendants' special verdict form appropriately requires the jury to make specific findings concerning a number of key fact issues, including:

1. Whether physicians using Vascular Solutions' products and following its instructions necessarily perform the requisite acts to *directly* infringe the Diomed patent.

2. Whether physicians using Angiodynamics's products and following its instructions necessarily perform the requisite acts to *directly* infringe the Diomed patent.

*See* Proposed Special Verdict Form of Defs.' Angiodynamics, Inc. and Vascular Solutions, Inc., Dkt. No. 193, Ex. A, at ¶¶ 1-3 (Vascular Solutions) & 9-11 (Angiodynamics).

March 6, 2007
Page 2

BURNS & LEVINSON LLP

These two underlying factual disputes must also be decided in the Total Vein Solutions case.

Diomed charges TVS with contributory infringement for selling procedure packs. Procedure packs include a number of common sterile components, including, for example, drapes, towels, sponges, ancillary products, needles and syringes, access devices, etc. To demonstrate contributory infringement, Diomed must prove that the TVS procedure packs have no substantial noninfringing uses. *E.g., Dynacore Holding Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) (holding that accused infringer cannot be liable for indirect infringement for products capable of substantial noninfringing uses). TVS contends that physicians who use the laser devices and follow the instructions provided by Angiodynamics and Vascular Solutions—but substitute the procedure packs of TVS—do not *directly* infringe the Diomed patent.

Thus, if the jury answers "no" to any of the defendants' special interrogatories relating to direct infringement, there would be shown to exist substantial noninfringing uses for the accused TVS procedure packs. Such a jury finding in the Angiodynamics/Vascular Solutions case would bind Diomed, so there would be no need for TVS and Diomed to re-litigate these underlying fact issues in the TVS case. *See Grella v. Salem Five Cent Savings Bank*, 42 F.3d 28, 30 (1st Cir. 1994) (reciting elements relevant to defense of issue preclusion or collateral estoppel).

Special verdict forms in patent cases are also favored for other reasons. *E.g., Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, n.8 (1997) ("[A] special verdict and/or interrogatories on each claim element could be very useful in facilitating review, uniformity, and possibly post verdict judgments as a matter of law."); *Richard-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1485 (Fed. Cir. 1997) ("The special verdict compels detailed consideration. But above all it enables the public, the parties and the court to see what the jury has really done.").

For these reasons, interested party TVS respectfully requests that the Court adopt the special verdict form proposed by the defendants and reject the more general verdict form proposed by plaintiff. In the event that the Court deems it helpful, TVS would welcome an opportunity to provide additional written or oral argument.

Very truly yours,

Merton E. Thompson
COUNSEL FOR INTERESTED PARTY
TOTAL VEIN SOLUTIONS, LLC

MET/dd
Enclosure

551214-1

MASSACHUSETTS :::  RHODE ISLAND :::  DISTRICT OF COLUMBIA

March 6, 2007
Page 3

BURNS & LEVINSON LLP

cc:   *Each via facsimile*

    Michael A. Albert
    Michael N. Rader
    John L. Strand
    WOLF, GREENFIELD & SACKS, P.C.
    600 Atlantic Avenue
    Boston, MA 02210
    (617) 720-2441 (fax)
    COUNSEL FOR DIOMED, INC.

    William H. Bright, Jr.
    Mark D. Giarratana
    MCCARTHER & ENGLISH, LLP
    City Place I
    185 Asylum Street
    Hartford, CT 06103
    (860) 724-3397 (fax)
    COUNSEL FOR ANGIODYNAMICS, INC.

    Thomas Vitt
    Heather Redmond
    DORSEY & WHITNEY LLP
    Suite 1500
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    (612) 340-8856 (fax)
    COUNSEL FOR VASCULAR SOLUTIONS, INC.

    Audrey A. Millemann
    Dale C. Campbell
    David Himelfarb
    WEINTRAUB, GENSHLEA, CHEDIAK & SPROUL
    400 Capitol Mall
    11th Floor
    Sacramento, CA 95814
    (916) 446-1611 (fax)
    COUNSEL FOR NEW STAR LASERS, INC., DBA COOLTOUCH, INC.

March 6, 2007
Page 4

**BURNS & LEVINSON LLP**

bcc:  Todd Patterson, Esq.
      Henry Pogorzelski, Esq.
      Chantal Rappi, Esq.

      David Centanni
      Total Vein Solutions, L.L.C.
      901 Yale Street
      Houston, Texas 77008

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No.: 04-10444-NMG <br> ) <br> ) |
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No.: 04-10019-NMG <br> ) <br> ) |

### PROPOSED SPECIAL VERDICT FORM OF DEFENDANTS ANGIODYNAMICS, INC. AND VASCULAR SOLUTIONS, INC.

Pursuant to Fed.R.Civ.P. 49(a) and the Court's order of December 8, 2006, Defendants hereby submit their proposed special verdict form.

Respectfully submitted,

**VASCULAR SOLUTIONS, INC.**

By its counsel,

/s/ Steven L. Feldman
Steven L. Feldman (BBO #162290)
Ruberto, Israel & Weiner, P.C.
100 North Washington Street
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

~and~

J. Thomas Vitt MN #183817
Heather D. Redmond MN #313233
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600

**ANGIODYNAMICS, INC.**

By its counsel,

/s/ William H. Bright, Jr.
William H. Bright, Jr.
Mark D. Giarratana
McCarter & English, LLP
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103
Telephone (860) 275-6700

~and~

Rodney S. Dowell (BBO #629016)
Berman & Dowell
210 Commercial Street
Boston, Massachusetts 02109
Telephone (617) 723-99911

Dated: February 26, 2007

I. QUESTIONS CONCERNING DEFENDANT VASCULAR SOLUTIONS, INC.

  A. Questions concerning Diomed's allegations of direct infringement by VSI customers of the '777 Patent.

  1. Has Diomed proven by a preponderance of the evidence that physicians using VSI's Vari-Lase products and following VSI's instructions necessarily and deliberately put the uncoated tip of the laser fiber into physical contact with the wall of the blood vessel?

  Yes _____   No _____

  2. Has Diomed proven by a preponderance of the evidence that physicians using VSI's Vari-Lase products and following VSI's instructions necessarily maintain the deliberately placed uncoated tip of the laser fiber in physical contact with the wall of the blood vessel while laser energy is being emitted?

  Yes _____   No _____

  3. Has Diomed proven by a preponderance of the evidence that physicians using VSI's Vari-Lase products and following VSI's instructions necessarily cause a decrease in the diameter of the blood vessel solely by means of deliberate, maintained contact between the uncoated tip of the laser fiber and the wall of the blood vessel?

  Yes _____   No _____

If you answered "Yes" to all three questions, please proceed to questions 4-6 concerning VSI. If you answered "No" to any one of the three questions, please skip the remaining questions concerning VSI and proceed to the questions concerning AngioDynamics beginning at question 9.

  B. Question concerning Diomed's allegations of inducement of infringement by VSI.

  4. Has Diomed proven by a preponderance of the evidence that VSI specifically intended to encourage physicians using its Vari-Lase products to infringe the '777 patent, and thereby induced infringement?

  Yes _____   No _____

    C.    **Questions concerning Diomed's allegations of contributory infringement by VSI.**

    5.    Has Diomed proven by a preponderance of the evidence that VSI knew that following its instructions for use of its Vari-Lase products would necessarily result in infringement of the '777 patent?

        Yes _____    No _____

    6.    Has Diomed proven by a preponderance of the evidence that VSI's Vari-Lase products have no substantial non-infringing use?

        Yes _____    No _____

If you answered "Yes" to question 4, or if you answered "Yes" to both questions 5 AND 6, please answer questions 7-8. If you answered "No" to question 4 AND answered "No" to either question 5 or 6, please skip questions 7-8 and proceed to the questions concerning AngioDynamics beginning at question 9.

    D.    **Questions concerning Diomed's allegations of damages and willful infringement.**

    7.    What amount of compensatory damages has Diomed proven by a preponderance of the evidence resulted from VSI's infringement?

        _____

    8.    Has Diomed proven by clear and convincing evidence that VSI's infringement was willful?

        Yes _____    No _____

**II.    QUESTIONS CONCERNING DEFENDANT ANGIODYNAMICS, INC.**

    A.    **Questions concerning Diomed's allegations of direct infringement by AngioDynamics' customers of the '777 Patent.**

    9.    Has Diomed proven by a preponderance of the evidence that physicians using AngioDynamics' VenaCure products and following AngioDynamics' instructions necessarily and deliberately put the uncoated tip of the laser fiber into physical contact with the wall of the blood vessel?

        Yes _____    No _____

10. Has Diomed proven by a preponderance of the evidence that physicians using AngioDynamics' VenaCure products and following AngioDynamics' instructions necessarily maintain the deliberately placed uncoated tip of the laser fiber in physical contact with the wall of the blood vessel while laser energy is being emitted?

Yes _____   No _____

11. Has Diomed proven by a preponderance of the evidence that physicians using AngioDynamics' VenaCure products and following AngioDynamics' instructions necessarily cause a decrease in the diameter of the blood vessel solely by means of deliberate, maintained contact between the uncoated tip of the laser fiber and the wall of the blood vessel?

Yes _____   No _____

If you answered "Yes" to all three of questions 9-11, please proceed to questions 12-14 concerning AngioDynamics. If you answered "No" to any one of questions 9-11, please skip the remaining questions concerning AngioDynamics.

**B. Question concerning Diomed's allegations of inducement of infringement by AngioDynamics.**

12. Has Diomed proven by a preponderance of the evidence that AngioDynamics specifically intended to encourage physicians using its VenaCure products to infringe the '777 patent, and thereby induced infringement?

Yes _____   No _____

**C. Questions concerning Diomed's allegations of contributory infringement by AngioDynamics.**

13. Has Diomed proven by a preponderance of the evidence that AngioDynamics knew that following its instructions for use of its VenaCure products would necessarily result in infringement of the '777 patent?

Yes _____   No _____

14. Has Diomed proven by a preponderance of the evidence that AngioDynamics' VenaCure products have no substantial non-infringing use?

Yes _____   No _____

If you answered "Yes" to question 12, or if you answered "Yes" to both questions 13 AND 14, please answer questions 15-16. If you answered "No" to question 12 AND answered "No" to either question 13 or 14, please skip questions 15-16.

**D. Questions concerning Diomed's allegations of damages and willful infringement.**

15. What amount of compensatory damages has Diomed proven by a preponderance of the evidence resulted from AngioDynamics' infringement?

_____

16. Has Diomed proven by clear and convincing evidence that AngioDynamics' infringement was willful?

Yes _____  No _____

_____        Date: _____
Foreperson

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this 26th day of February, 2007, through the Court's electronic filing system, which serves electronically counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail, postage prepaid, on this same date.

/s/ Steven L. Feldman, Esq.

U:\CPR\Steven Feldman\Vascular Solutions\Diomed Patent\Trial\VSI - Special Verdict Form.doc