UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| DIOMED, INC.,<br><br>　　Plaintiff,<br><br>v.<br><br>TOTAL VEIN SOLUTIONS, LLC,<br><br>　　Defendant. | Civil Action No. 04-10686 NMG |

**TOTAL VEIN SOLUTIONS' AMENDED OPPOSITION TO DIOMED'S
MOTION TO COMPEL AND CROSS-MOTION TO STAY THIS CASE PENDING
RESOLUTION OF DIOMED'S LAWSUITS AGAINST THE FOUR FULL-SERVICE
ENDOVENUOUS LASER COMPANIES**

　　Defendant Total Vein Solutions, LLC, ("TVS") hereby respectfully provides its amended opposition to Diomed's Motion to Compel Discovery Responses and Depositions and cross-motion for a stay of all proceedings in this action.

　　Pursuant to this Court's Order dated April 26, 2007, counsel for the parties have met and conferred in person in an attempt to resolve and narrow issues presented in their previous motions. The parties were not able to agree to withdraw their motions, and intervening events are believed to have rendered certain of the arguments in TVS's previous motion incomplete. Accordingly, TVS respectfully submits that this amended brief will be helpful to the Court.

　　Plaintiff Diomed, Inc. ("Diomed") is currently pursuing similar patent infringement actions in this district against four other defendants: New Star Lasers, Inc. ("CoolTouch") (Case No. 1:04-cv-12157-NMG); Dornier MedTech America, Inc. ("Dornier") (Case No. 1:07-cv-10612-NMG), and Angiodynamics, Inc. ("Angiodynamics") and Vascular Solutions Inc. ("VSI")

(consolidated as Case No. 1:04-cv-10019-NMG). Each of these actions involves common disputed issues of fact and law. The present case between Diomed and TVS is tied as a matter of law to the final outcome of the other cases because TVS is not accused of direct patent infringement and only faces contributory or inducing infringement claims. TVS merely supplies generic disposable laser fibers and kits containing common medical supplies. Accordingly, if Diomed fails to establish direct infringement with respect to the laser technologies and techniques of <u>all</u> of the other defendants, Diomed's case against TVS must fail. *See Dynacore Holding Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1278 (Fed. Cir. 2004) (holding that accused infringer cannot be liable for indirect infringement for selling products capable of substantial noninfringing uses). Thus, as explained in greater detail below, a stay of further proceedings would conserve judicial and party time, resources, and energy, while not working any substantial hardship upon Diomed.

For these reasons, this Court should deny Diomed's motion to compel additional discovery and grant TVS's cross-motion to stay this case pending resolution of Diomed's claims against the four other defendants.

**I.     Procedural Background**

During the first quarter of 2004, Diomed filed two similar patent infringement actions against Angiodynamics and VSI alleging infringement of Diomed's U.S. Patent No. 6,398,777 ("the '777 patent"). The '777 patent relates to certain claimed methods of treating a blood vessel using laser energy. In April 2004, Diomed filed the present action against TVS. In October 2004, Diomed filed a similar patent infringement action against CoolTouch. More recently, in March of this year, Diomed filed an infringement action against Dornier.

Diomed's actions against Angiodynamics and VSI were later consolidated, but the actions against TVS and CoolTouch have remained separate. In April 2005, this Court issued a claim construction order in the consolidated Angiodynamics/VSI action, construing certain disputed terms of the '777 patent. However, this order has not yet been adopted in the present litigation, and TVS as well as Diomed have reserved their rights to request additional claim construction as appropriate. Diomed's consolidated actions against Angiodynamics and VSI were tried to a jury in March of this year, resulting in a general jury verdict in Diomed's favor. As of the date of this brief, the Court has not yet determined the appropriate scope of an injunction to be issued, and both defendants have indicated their intent to appeal various issues to the Federal Circuit.

Some discovery has taken place in the present action. However, after the summer of 2005, TVS came to believe that Diomed and TVS had each implicitly chosen to conserve their resources and not pursue extensive discovery in this case. Accordingly, the present litigation remains in its early stages. It is believed that Diomed's action against CoolTouch is similarly situated.

## II.   Brief Introduction to the Parties and Technologies

Diomed is a leading supplier of a number of products and services relating to endovenous laser surgery. Diomed employs a sizeable staff of approximately 80 individuals to sell physician training services, laser energy generating devices (hereafter "lasers"), vein viewers, disposable laser fibers, and certain other disposable devices used by physicians for endovenous laser surgery.

Similarly, defendants CoolTouch, Dornier, Angiodynamics, and VSI are also each "full-service" endovenous laser companies. Each also sells physician training, lasers, disposable laser

fibers, and other disposable tools for endovenous laser surgery. *See* Ex. A–D, respectfully. The lasers supplied by Dornier, Diomed, Angiodynamics, VSI and others operate using laser energy having wavelengths in the range of 810–980 nm. *Id.* These lasers are said to target the iron in hemoglobin, which is a component of a patient's blood. *See* Ex. A. The CoolTouch laser, however, is believed to be critically different from the lasers sold by Diomed and the three other full-service defendants. In particular, the CoolTouch laser operates using laser energy having a wavelength of 1320 nm. *See* Ex. A. According to CoolTouch, the 1320 nm wavelength laser energy targets water in a patient's vein wall. *Id.*

In contrast to these full-service laser companies, Defendant TVS does not attempt to train physicians or sell lasers. Rather, TVS sells generic disposable laser fibers and a number of convenient "procedure packs." TVS procedure packs include a number of common sterile components, including, for example, drapes, towels, sponges, ancillary products, needles and syringes, access devices, etc. The laser fibers sold by TVS may be used in conjunction with lasers supplied by CoolTouch, Dornier, Angiodynamics, VSI and Diomed.

Market shares and other information concerning Diomed, CoolTouch, Angiodynamics and VSI are described in a page from Diomed's website attached as Exhibit E. In that page, Diomed describes TVS as a "minor participant" relative to Angiodynamics, VSI, and CoolTouch. *Id.*

### III.  Arguments and Authorities

A motion to stay proceedings is directed to the sound discretion of a court. *E.g., Kistler Instrumente A.G. v. PCB Piezotronics,* 419 F. Supp. 120, 123 (W.D.N.Y. 1976). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254 (1936).

A court should most likely stay proceedings where a stay would conserve judicial time, resources and energy. *See, e.g., Uniroyal, Inc. v. Sperberg,* 63 F.R.D. 55, 60 (S.D.N.Y. 1973). Relevant factors to be considered include the extent to which the controversies involve identical issues and parties, the likelihood that one of the actions will reach an earlier conclusion, and the relative ease of access to sources of proof. *See Rosenfeld v. Schwitzer Corp.,* 251 F. Supp. 758, 764 (S.D.N.Y. 1966).

### A. A Stay Would Preserve Judicial and Party Time and Resources

A stay of proceedings in this action would preserve judicial time and resources in a number of important respects. First, it would allow key issues of direct infringement for the different laser technologies and techniques to be litigated by the particular parties best positioned to address them. Second, a stay would likely allow time for the Federal Circuit to provide guidance on key issues of claim construction, infringement, and patent validity. Third, a stay would prevent the Court from being required to address certain difficult issues of privilege and waiver with respect to Dornier. Last, it could very well eliminate the need for any further discovery and eventual trial involving the present case.

Diomed has taken the position throughout the present action that its '777 patent covers all commercially viable endovenous laser procedures used to treat varicose veins. In other words, as understood, the only way for physicians to successfully perform an endovenous laser surgical procedure to treat varicose veins is to perform the procedure in a manner that infringes the methods claimed in the '777 patent. Diomed takes this position because CoolTouch and Dornier

and the other defendants promote competing laser technologies and techniques that are different in certain respects from the laser technology and techniques promoted by Diomed.

In the present case, Diomed alleges that TVS has indirectly infringed the '777 patent in two ways. First, as understood, Diomed contends that TVS has contributorily infringed the '777 patent by selling its laser fibers and procedure packs to physicians. *See* 35 U.S.C. § 271(c). Second, Diomed alleges that TVS induces physicians to infringe the '777 patent by selling its laser fibers and procedure packs. *See* 35 U.S.C. § 102(b). Diomed's contributory infringement and inducement causes require, among other things, a showing of *direct* infringement by the actual physicians performing laser surgery using TVS supplied products. *See, e.g., C.R. Bard, Inc. v. Advanced Cardiovascular Sys.,* 911 F.2d 670, 673 (Fed. Cir. 1990). Additionally, contributory infringement requires a showing that the TVS laser fibers and procedure packs are not staple articles or commodities of commerce suitable for substantial noninfringing use. *See id.; Dynacore Holding Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1278 (Fed. Cir. 2004) (holding that accused infringer cannot be liable for indirect infringement for selling products capable of substantial noninfringing uses). In other words, if the accused TVS products can be used in a noninfringing manner by physicians using any of the endovenous laser technologies promoted by either of CoolTouch or Dornier, there can be no finding of contributory infringement against TVS.

Thus, Diomed's present case against TVS will require Diomed to prove that the use of the competing laser technology and techniques of both CoolTouch *and* Dornier must necessarily infringe the '777 patent.[1] TVS respectfully submits that it would be wasteful and inefficient for both the Court and the parties to require TVS to litigate these two issues of direct infringement at

---

[1] Diomed will also have to prove in the present case that the use of the competing laser technologies and techniques of Angiodynamics and VSI must also necessarily infringe the '777 patent.

this time. Rather, TVS submits that in the interests of judicial efficiency the CoolTouch and Dornier infringement issues should first be litigated by the most interested and best situated parties—CoolTouch and Dornier.

A stay of the present case will also likely preserve judicial resources by allowing an opportunity for the Federal Circuit address key disputed issues of claim construction, infringement, and validity. As the Court is aware, the Federal Circuit engages in a *de novo* review of a district court's claim construction, and issues of patent infringement and validity are necessarily premised upon a proper claim construction. *E.g., Dynacore,* 363 F.3d 1273 (infringement analysis premised upon claim construction); *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999) (validity analysis premised upon claim construction). Should the present case proceed through discovery and trial at this time, it would appear likely that this case would be tried only a few months prior to issuance of an authoritative opinion from the Federal Circuit concerning the Angiodynamics/VSI litigation.

A stay will likewise also preserve judicial resources by allowing the Court to avoid a potentially difficult issue of privilege and waiver with respect to defendant Dornier. TVS is a small company employing approximately eight individuals in Houston, Texas. Ex. F. ¶ 2. However, TVS's principal, Mr. David Centanni, was formerly employed by Dornier. *Id.* ¶ 3. While employed by Dornier, Mr. Centanni was exposed to both Dornier proprietary information concerning Dornier's laser products and Dornier attorney-client privileged communications relating to Dornier's view as to the proper scope of Diomed's '777 patent. Ex. F. ¶ 4.

As a former employee of Dornier, Mr. Centanni is contractually bound to maintain the confidentiality of Dornier's proprietary and privileged information. *See* Ex. G (letter from Dornier counsel to TVS counsel, reminding TVS of Mr. Centanni's confidentiality obligations).

Further, Dornier has to date been adamant in preventing its proprietary and privileged information from being discovered by Diomed. *Id.*

Diomed argues, and TVS does not dispute, that in the event that discovery in this case moves forward, Diomed would be entitled to discover all relevant information from Mr. Centanni. However, this case presents a unique situation. In the event that TVS decides to waive the attorney-client privilege and assert an advice of counsel defense to Diomed's charge of *willful* patent infringement, TVS will also be required to divulge privileged information that Mr. Centanni acquired while with Dornier. In other words, if this case moves forward, TVS may be forced to waive the attorney-client privilege for defendant Dornier.

Rather than bring this issue concerning non-party Dornier to a head, TVS respectfully suggests that a stay of the current proceedings is appropriate. In the event that the direct infringement issues with respect to the laser technologies of either of CoolTouch or Dornier are resolved against Diomed, then Diomed would be bound by those determinations, and there would be no basis for Diomed's action against TVS.[2] *See Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 28, 30 (1st Cir. 1994) (reciting elements establishing issue preclusion).

### B.    A Formal Stay Will Not Cause Substantial Hardship

By Diomed's own admission, TVS is a minor participant in the endovenous laser procedure field. *See* Ex. E. While Diomed asserts hardship in a conclusory manner in its motion papers, it provides no hard evidence that TVS's sales of its allegedly infringing laser fibers and procedure packs have caused substantial hardship. Rather, Diomed's decision early in this case to conserve resources and concentrate on its other pending infringement actions implicitly shows

---

[2]    Likewise, should the Federal Circuit determine as a matter of law that there is no direct infringement with respect to physicians practicing the methods and technologies of Angiodynamics or VSI, then such a determination would bind Diomed and preclude Diomed's action against TVS.

that the accused acts of infringement by TVS are of relatively little importance to Diomed's bottom line.

### C. Response to Diomed Requests for Discovery

TVS does not dispute that in the event the Court determines a stay of this proceeding is not appropriate, Diomed would be entitled to proceed with the discovery requested in its motion. In such event, should Diomed wish to discover what Mr. Centanni may know concerning Dornier's laser-related activities, TVS would be willing to provide Mr. Centanni's testimony. However, TVS believes it must protect itself from potential contractual liability to Dornier. Thus, in the event the Court determines a stay of this proceeding is not appropriate, TVS believes it must insist upon (but will not oppose) an appropriate order from this Court.

### CONCLUSION

For the above reasons, the Court should deny Diomed's motion to compel and order that this case be stayed pending the resolution of its district court actions against CoolTouch and Dornier, and pending resolution at the Federal Circuit of Diomed's actions against Angiodynamics and VSI.

A proposed order is attached.

Date: _June 1, 2007___           Respectfully Submitted,

                                 TOTAL VEIN SOLUTIONS, LLC,
                                 By its attorneys,

                                  /s/ Merton E. Thompson
                                 Merton E. Thompson
                                 BBO #637056
                                 BURNS & LEVINSON LLP
                                 125 Summer Street
                                 Boston, MA 02110

Tel: (617) 345-3000
Fax: (617) 345-3299

Barden Todd Patterson
(admitted *pro hac vice*)
Henry M. Pogorzelski
(admitted *pro hac vice*)
PATTERSON & SHERIDAN, LLP
3040 Post Oak Boulevard, Suite 1500
Houston, Texas 77056
Tel:  (713) 623-4844
Fax:  (713) 623-4846

Craig V. Depew
(admitted *pro hac vice*)
CLARK, DEPEW & TRACEY, LLP
4400 Louisiana, 16th Floor
Houston, Texas  77002
Tel: (713) 757-1400
Fax: (713) 759-1217

ATTORNEYS FOR DEFENDANT
TOTAL VEIN SOLUTIONS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that today I caused a true and correct copy of this *Total Vein Solutions' Amended Opposition to Diomed's Motion to Compel and Cross-Motion to Stay This Case Pending Resolution of Diomed's Lawsuits Against the Four Full-Service Endovenous Laser Companies* to be served through the ECF system and by electronic mail upon the following counsel of record:

    Michael A. Albert
    Michael N. Rader
    John L. Strand
    WOLF, GREENFIELD & SACKS, P.C.
    600 Atlantic Avenue
    Boston, Massachusetts  02210
    Tel:  (617) 646-8000
    Fax:  (617) 646-8646

    ATTORNEYS FOR PLAINTIFF DIOMED, INC.

    /s/ Merton E. Thompson