## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DIOMED, INC.,

     **Plaintiff,**

v.

TOTAL VEIN SOLUTIONS, LLC,

          **Defendant.**

**Civil Action No. 04-10686 RGS**

## DEFENDANT TOTAL VEIN SOLUTIONS' SUPPLEMENTAL RESPONSES TO PLAINTIFF DIOMED'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of The United States District Court for the District of Massachusetts, Total Vein Solutions, LLC ("TVS"), the defendant, provides this supplemental response to Diomed, Inc.'s ("Diomed"), the plaintiff, first set of interrogatories as follows:

## GENERAL OBJECTIONS

The following general objections are incorporated by reference and apply to all of TVS' responses to the interrogatories.

1.     TVS objects to each and every interrogatory to the extent that such interrogatory seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure ("Federal Rules") and Local Rules.

2.     TVS objects to each and every interrogatory to the extent it seeks the disclosure of information that is not relevant to any claim or defense in this action, or reasonably likely to lead to the discovery of admissible evidence that is relevant to any claim or defense, under Rule 26(b)(1) of the Federal Rules.

3.      TVS objects to each and every interrogatory to the extent such interrogatory seeks information protected by the attorney-client privilege, the work product doctrine and/or any other applicable privileges, doctrines or immunities.    TVS further objects to identifying such documents generated since the inception of this litigation as such identification is unduly burdensome, unlikely to lead to the discovery of admissible evidence, and likely to reveal work product and/or attorney-client privileged information.  TVS further states that to the extent any privileged information is inadvertently provided in these responses, such provision shall not constitute waiter of the privilege or immunity as to any such information.

4.      [Objection withdrawn.]

5.      TVS objects to each and every interrogatory to the extent such interrogatory calls for information that TVS is prohibited from disclosing by contract, order, statute, rule, regulation or law.  In the case of information subject to a confidentiality obligation owed to a non-party, TVS objects to revealing such information until such time as the non-party agrees to production or an appropriate court order is entered.

6.      Consistent with Fed.R.Civ.P. 33(d), TVS objects to providing responses to interrogatories where the information can be derived from documents which are being or have been produced.

7.      TVS objects to each and every interrogatory to the extent such interrogatory seeks information obtainable from another source that is more convenient, less burdensome, or less expensive.  TVS further objects to the extent each interrogatory seeks the disclosure of information that is as easily ascertainable by Diomed, Inc. as it is by TVS or is readily available from public sources.

8.      TVS objects to each and every interrogatory to the extent that such interrogatory seeks to impose a burden on TVS to categorize information in a manner that is not readily available to TVS.

9.      TVS answers to these interrogatories are made without in any way waiving (a) the right to object, on the grounds of competency, relevancy, materiality, privilege, or admissibility as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action; and (b) the right to object on any grounds to other discovery requests involving or relating to the subject matter of these interrogatories.

10.     TVS objects to the interrogatories to the extent that they refer to "Laser Vein Treatment" as that term is vague and indefinite as it is defined in Diomed's First Interrogatories to Total Vein Solutions.

TVS has made and will continue to make reasonable inquiries and investigations concerning the information currently within TVS' possession, custody and control. TVS' responses are based on information available to TVS at the present time. TVS provides these responses without prejudice to its right to amend or supplement its responses. Subject to and including the foregoing objections all of which are incorporated by reference below in each separate response, TVS responds to Diomed's interrogatories as follows:


**INTERROGATORY NO. 1**

State when and how you first became aware of the `777 patent, including the individual(s) who first gained such knowledge, and what steps you took, if any, to determine whether you had infringed, were infringing, or would later infringe the `777 patent.

**RESPONSE:**

TVS specifically asserts all the general objections. TVS specifically objects this interrogatory to the extent it seeks information that may be subject to a confidentiality obligation owed to a non-party, and to the extent it seeks information protected by the attorney-client privilege and the work product doctrine. Subject to the specific objections and to each of the general objections, TVS responds as follows:

TVS first became aware of the `777 patent, as such, on April 6, 2004, when it was served with this lawsuit. Tyrell L. Schiek was the first employee of TVS to become aware of this suit, and thereafter consulted counsel regarding infringement.

Furthermore, TVS responds that it has recently been determined that David Centanni became vaguely aware of the existence of a patent relating to endovenous laser treatment, while an employee of Dornier, sometime during the 2002-2003 time period. At that time, Mr. Centanni did not actually view this patent, nor did he have any awareness as to the patent's ownership or inventorship. At that time, Mr. Centanni received abbreviated, privileged legal information from another Dornier employee concerning this patent. After TVS was served with the present lawsuit, Mr. Centanni became aware of the '777 patent, as such. Mr. Centanni now believes that the patent about which he became vaguely aware as a Dornier employee was the '777 patent.

**INTERROGATORY NO. 2**

Identify by name and model number each TVS Product (as defined hereinabove), state the date on which you first made, had made, used, imported, offered for sale, or sold in the United States each of the TVS Products, describe in full the development and/or

commercialization of each of the TVS Products, and identify all documents concerning the TVS Products, including, without limitation, all opinions of counsel related thereto.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that for identification of each TVS product, reference is made to documents that have been produced by TVS. TVS doesn't make any of its products. TVS purchases products from suppliers and sells its products to customers. Non-privileged sales documents responsive to this interrogatory have been produced.

**INTERROGATORY NO. 3**

For each TVS Product, for each month since the first sale of such TVS Product, state the monthly unit and dollar gross sales, the cost of production (per unit and in gross), the profit margin per unit, the net income chargeable to sales, and the total profit chargeable to sales.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that documents from which the requested information may be ascertained have been produced.

**INTERROGATORY NO. 4**

Identify all manufacturer(s) or other source(s) from whom you have purchased the TVS Products since your first sales thereof, and identify all documents concerning such entities.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that documents identifying sources of the TVS products have been produced.

**INTERROGATORY NO. 5**

Identify all persons and entities to whom you sell, have sold or have offered for safe, any TVS Products since you first sales thereof (collectively, your "customers"), and identify all documents concerning those customers.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that documents identifying TVS customers have been produced.

**INTERROGATORY NO. 6**

Identify any and all products or methods that compete with, or constitute alternatives to, the products and methods claimed in the `777 patent.

**RESPONSE:**

TVS specifically asserts all the general objections. TVS specifically objects to this request because Diomed, as the party asserting the `777 patent, is better positioned than TVS to possess this requested information. As noted by Judge Sterns in his Memorandum and Order on Claims Construction dated April 12, 2005 in the related case of *Diomed, Inc. v. Angiodynamics, Inc.*, the products and methods claimed in the '777 patent are of exceedingly narrow scope and application. Accordingly, subject to the specific objections and to each of the general objections,

TVS responds as follows: First, the products and methods used by physicians who purchased products from TVS are believed to make use of products and methods which compete with, and constitute noninfringing alternatives to, the products and methods claimed in the '777 patent. Moreover, on information and belief, the following products and methods also compete with, and constitute noninfringing alternatives to, the products and methods claimed in the '777 patent: (1) Products and methods using a laser to close a saphenous vein, as advanced for example, by the following companies and their physician customers and/or trainees: (a) Biolitec; (b) Dornier; (c) Angiodynamics; (d) Vascular Solutions, Inc.; (e) New Star Lasers, Inc.; and (f) Diomed, Inc. (under its EVLT alleged trademark); (2) Products and methods using radio frequency to close a saphenous vein, including without limitation, the products and methods advanced by VNUS Medical Systems under its CLOSURE brand.

Furthermore, the prior art is replete with patents and other publications that disclose products and methods that compete with, and constitute noninfringing alternatives to, the products and methods claimed in the '777 patent. *See e.g.,* response to interrogatory no. 16.

TVS' investigation of this matter is ongoing. TVS reserves its right to seasonably supplement its response to this interrogatory.

## INTERROGATORY NO. 7

Identify all individuals who participate, or have participated, in the following activities with respect to the TVS Products: research, design, development, engineering, testing, manufacture, quality control, regulatory approval, marketing, distribution, importation, purchase, sales, and sourcing.

**RESPONSE:**

TVS specifically asserts all the general objections. TVS specifically objects to this request because TVS is a distributor of medical products. TVS did not research, design, develop, engineer, test, manufacture, test for quality, and/or seek regulatory approval of TVS products. Subject to the specific objections and to each of the general objections, TVS is not aware of the identity of such persons. Tyrell L. Schiek of TVS participated in marketing, distribution, purchase, sales, and sourcing of the TVS Products. TVS has not imported any products.

**INTERROGATORY NO. 8**

Identify all persons, including physicians, who act or have acted as spokespeople for, or who consult or have consulted with, TVS concerning the TVS Products and/or Laser Vein Treatment.

**RESPONSE:**

TVS specifically asserts all the general objections, and specifically asserts the objection that the term "Laser Vein Treatment" is vague and indefinite. Subject to this specific objection and to each of the general objections, TVS responds that other than Tyrell L. Schiek and David S. Centanni, TVS has used no outside consultants or spokespeople.

**INTERROGATORY NO. 9**

Identify all documents and correspondence concerning Diomed, its products, the `777 patent, and any aspect of Laser Vein Treatment.

**RESPONSE:**

TVS specifically asserts all the general objections.  TVS further objects to the extent that the interrogatory seeks information protected from discovery by the attorney client privilege and the attorney work product immunity.  Subject to the specific objection and to each of the general objections, TVS responds as follows:

Certain responsive documents are identified on TVS' privilege log.  With regard to other documents concerning Diomed, TVS has produced a Diomed catalog entitled "Surgical Diode Lasers," and a Total Vein Solutions order form which refers to Diomed.  Other TVS advertising materials may also reference Diomed and/or its alleged EVLT trademark.  These documents have also been produced.  At this time TVS does not have, nor does it know of, any correspondence relating to Diomed.  At this time TVS does not have, nor does it know of, any such documents and/or correspondence outside of those associated with this lawsuit, that refer in any way to the `777 patent.

**INTERROGATORY NO. 10**

Identify all studies, analyses or other evaluations of the `777 patent, and any other patent(s) Concerning Laser Vein Treatment, and set forth in detail whether, and if so how, any such documents support or otherwise relate to your defense against the charges of infringement, and/or willful infringement, of the `777 patent.

**RESPONSE:**

TVS specifically asserts all the general objections.  Subject to each of the general objections, TVS responds that at this time TVS knows of no non-privileged studies, analyses, or other evaluations.  *See* TVS' privilege log, and TVS' response to Interrogatory No. 1.

## INTERROGATORY NO. 11

State the basis for TVS' Affirmative Defense of patent invalidity (paragraph 16 of TVS' Answer) and the contention(s) of paragraph 24 of TVS' Counterclaim, in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment thereon, including a claim chart setting forth the limitations of each claim of the `777 patent, your proposed construction of each such limitation, and the Prior Art that you believe invalidates each claim.

## RESPONSE:

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds as follows:

TVS contends that the claims of the `777 patent are invalid at least under U.S.C. Title 35, and particularly under one or more of the following: 35 U.S.C. § 102, 35 U.S.C. § 103, and 35 U.S.C. § 112. Furthermore, see TVS' response to Interrogatory No. 16.

TVS' investigation of this matter is ongoing. TVS reserves its right to seasonably supplement its response to this interrogatory.

## INTERROGATORY NO. 12

State the basis for the contention(s) of paragraph 23 of TVS' Counterclaim in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment thereon, including a claim chart setting forth the limitations of each claim of the `777 patent, your proposed construction of each such limitation, and an explanation of why you contend that TVS has not infringed, contributed to infringement of, or induced infringement of, each claim (both literally and under the doctrine of equivalents).

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds as follows:

TVS contends that it has not and presently does not, directly infringe any claim of the `777 patent. TVS contends that it has not and presently does not, indirectly infringe any claim of the `777 patent, either by contributory infringement or by inducement of infringement. Subject to the general objections, TVS states as follows:

TVS does not *directly* infringe any claim of the '777 patent because TVS does not itself perform any medical procedures. TVS is strictly a distributor of medical products.

TVS does not *indirectly* infringe any claim of the '777 patent for a number of reasons. First, TVS cannot be an indirect infringer of any claim of the '777 patent because, as currently understood, the consumers of TVS products who may perform lasers vein treatments are not themselves direct infringers of any claim of the '777 patent. That is, as currently understood, consumers of TVS products performing lasers vein treatments do not "deliberately put[] the uncoated tip of a fiber optic line in physical contact with the wall of the blood vessel, which requires the drainage of blood and compression of the vein" nor do they generally maintain such physical contact between the uncoated tip of a fiber optic line and the interior wall of the blood vessel while laser energy is emitted to decrease the diameter of the blood vessel, both of which actions are required by the '777 patent. The relevant claim limitations of the '777 patent are not entitled to any scope of equivalents that would encompass the consumers of TVS' products, pursuant to at least the doctrine of prosecution history estoppel and the specific exclusion rule. Furthermore, these claim limitations are not entitled to any scope of equivalents by reason of the relevant prior art and the rule limiting equivalents enunciated in *Wilson Sporting Goods.* For

this reason alone, in the absence of a direct infringement, TVS cannot be liable for indirect infringement.

In addition, TVS has not committed any acts of inducing infringement under 35 U.S.C. § 271(b). TVS has not in any way caused or encouraged its customers to perform the requisite acts of direct infringement. Further, TVS has not intended to cause its customers or any other third party to perform the requisite acts of direct infringement. The complete absence of such acts by TVS provides an additional reason why TVS cannot be liable for inducing infringement under 35 U.S.C. § 271(b).

Further still, TVS has not committed any acts of contributory infringement under 35 U.S.C. § 271(c). The products sold by TVS are staple items of commerce, and they have substantial noninfringing uses (assuming for the sake of argument that these products are capable of being used in an infringing manner, and that they are actually used by physicians in an infringing manner). The products sold by TVS are not especially made or especially adapted for use in a manner which infringes the '777 patent, and TVS certainly has no knowledge that these products are so especially made or adapted. For all of these reasons, TVS cannot be liable for contributory infringement under 35 U.S.C. § 271(c).

TVS' investigation of this matter is ongoing. TVS reserves its right to seasonably supplement its response to this interrogatory.


**INTERROGATORY NO. 13**

Explain in detail the manner in which you contend that your Laser Vein Treatment achieves the goal of treating superficial vein reflux, and provide the medical and scientific basis for your explanation.

**RESPONSE:**

TVS specifically asserts all the general objections. TVS objects to this interrogatory to the extent that the term "Laser Vein Treatment" is vague and indefinite. TVS further objects to this interrogatory because TVS does not perform or promote any specific medical procedure or protocol, including Laser Vein Treatment, and likewise TVS has insufficient knowledge of any material procedure or protocol, including Laser Vein Treatment, to provide the medical and scientific basis for any medical procedure or protocol, including Laser Vein Treatment. TVS is strictly a distributor of medical products. Subject to the specific objections and to each of the general objections, TVS makes no contentions regarding the efficacy of any medical treatment.

**INTERROGATORY NO. 14**

Describe in detail the procedure you recommend or instruct for use of the TVS Products in treating superficial vein reflux. If your recommended procedure has changed over time, please describe each such procedure and set forth the time period(s) during which you recommended or instructed that such procedure be used.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that it does not recommend or promote specific medical procedures or products. TVS is strictly a distributor of medical products.

**INTERROGATORY NO. 15**

State whether the tip of the laser fiber is in contact with the vein wall when used in your recommended treatment procedure, and state the basis, including all medical and/or scientific support, for your position on this issue.

**RESPONSE:**

TVS specifically asserts all the general objections. TVS objects to this interrogatory because TVS does not recommend or promote specific medical procedures and does not direct or control the performance of any medical procedures. TVS is strictly a distributor of medical products. Subject to the foregoing specific objections and to each of the general objections, and as currently understood, and based in part upon the limited discovery materials Diomed has so far provided, TVS responds as follows:

No. TVS further states that as currently understood, vascular surgeons performing laser treatment on saphenous veins generally do not "deliberately put[] the uncoated tip of a fiber optic line in physical contact with the wall of the blood vessel, which requires the drainage of blood and compression of the vein," nor do they generally maintain such physical contact between the uncoated tip of a fiber optic line and the interior wall of the blood vessel while laser energy is emitted to decrease the diameter of the blood vessel. Both of which actions are required by each of the claims of the '777 patent.

TVS' investigation of this matter is ongoing. TVS reserves its right to seasonably supplement its response to this interrogatory.

**INTERROGATORY NO. 16**

Identify all documents and things, including all Prior Art, that support your argument that one or more claims of the `777 patent is invalid.

**RESPONSE:**

TVS specifically asserts all the general objections.    TVS further objects to this interrogatory because it would be premature to provide all of the bases for TVS' Affirmative Defense of patent invalidity at this time.   Subject to the specific objection and to each of the general objections, TVS identifies at least the following documents which invalidate the claims of the '777 patent and/or which else limit the scope of the claims of the '777 patent: U.S. Patent 4,564,011 to Goldman; U.S. Patent 5,531,739 to Trelles; U.S. Patent 5,022,399 to Biegeleisen; an article entitled "Use of Venoscope for the Treatment of Varicose Veins", authored by Biegeleisen and Nielsen, PHLEBOLOGIE, A. Davey, R. Stemmer, Eds., 1989 John Libbey Eurotext Ltd., pp. 419-422; and DE 31 19 322 A1, to Dr. Frank Frank.

Furthermore, on information and belief, one or more claims of the '777 patent may also be invalid and/or limited in scope by reason of an article authored by O'Reilly, *et al.,* entitled "Transcatheter Fiberoptic Laser Coagulation of Blood Vessels," RADIOLOGY, 1982, 142(3): 777-780 ("the O'Reilly Paper"); an article authored by Dr. Brunello Puglisi published in PHLEBOLOGIE entitled "L'application du laser ND-YAG dans le traitement du syndrome variqueux," which translates to "Application of the ND-YAG laser in the treatment of varicose syndrome" ("the Puglisi Paper"); the video and oral presentation of the Puglisi Paper by Dr. Puglisi and Dr. San Filippo at the 10th World Congress of Phlebologie in Strasbourg, France, and elsewhere, to hundreds of phlebologists ("the Puglisi Video"); and the article authored by

Dr. Mazza published in MINERVA ANGIOLOGICA entitled "L'uso dell'argon laser nel trattamento delle varici essenxiali degli arti inferion" ("the Mazza Paper").

TVS' investigation of this matter is continuing, and TVS reserves the right to supplement this response.

## INTERROGATORY NO. 17

Identify all Diomed products ever in your possession, custody, or control, state the date on which each such Diomed product was acquired, and identify all persons having knowledge of TVS' decision to acquire each such Diomed product.

### RESPONSE:

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that no Diomed product, to the best of TVS' knowledge, is or ever has been, in the possession, custody or control of TVS.

## INTERROGATORY NO. 18

Identify all advertising and marketing materials you use or have used in connection with the TVS Products.

### RESPONSE:

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that its advertising and marketing materials include TVS' catalogs, post cards, flyers, and similar materials, and that such materials have been produced to Diomed.

**INTERROGATORY NO. 19**

Identify, by date and location, all training programs you have provided with respect to Laser Vein Treatment, identify all individuals involved in and/or attending such programs, and identify all documents concerning such programs.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that it has not provided, and does not currently provide, any such programs.

**INTERROGATORY NO. 20**

Identify every person who has, claims to have, or who you believe may have, knowledge or information concerning the subject matter of this case, and state the substance of the knowledge or information that you believe such person(s) have or may have.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds as follows:

At this time, TVS believes that at least all persons listed in Diomed's Initial Disclosures to TVS are likely to have knowledge or information concerning the subject matter of this case. Those individuals in Diomed's Initial Disclosures associated with Diomed and/or the '777 patent are believed to have knowledge or information relating to Diomed, its sales and marketing efforts, and the non-infringement, invalidity, and unenforceability of the '777 patent. David Centanni and Tyrell L. Schiek have knowledge and information relating to TVS' product line and its sales and marketing efforts. Further, David Centanni has knowledge and information

relating to Diomed, its sales and marketing efforts, and the non-infringement and invalidity of the '777 patent. Furthermore, various non-party witnesses currently or formerly associated with Angiodynamics, Vascular Solutions, Inc., New Star Lasers, Inc., VNUS Medical Technologies, Inc. and Dornier are likewise believed to have knowledge or information relating to Diomed, its sales and marketing efforts, and the non-infringement, invalidity, and unenforceability of the '777 patent. Joe Brown of Optical Integrity, Inc. is believed to have knowledge or information relating to Diomed, its products, its sales and marketing efforts, and the the '777 patent's lack of novelty and obviousness. Further still, Dr. Frank Frank of Germany, and others associated with Dr. Frank at Messerschmitt-Bolkow-Blohm, GmbH are believed to have knowledge relating to the '777 patent's lack of novelty and obviousness.

TVS' investigation is continuing, and TVS reserves the right to supplement this response at the appropriate time.


**INTERROGATORY NO. 21**

Identify each person whom you may use as an expert witness at trial, and state in detail the opinion(s) to be provided by such person(s).

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that at the present time, no such witnesses have been identified. TVS reserves the right to supplement this response at the appropriate time.

**INTERROGATORY NO. 22**

Identify each person consulted in connection with the preparation of responses to the foregoing interrogatories, and/or consulted in connection with this lawsuit in any way, and identify the subject matter discussed with each such person.

**RESPONSE:**

TVS specifically asserts all the general objections. TVS further objects to this interrogatory as vague and overly broad, and as improperly requesting information immune from discovery by the attorney work product doctrine, to the extent it requests consultations connected with this lawsuit "in any way". Subject to the specific objection and to each of the general objections, TVS responds that TVS counsel consulted with David Centanni and Tyrell L. Schiek in connection with the preparation of responses to the foregoing interrogatories.

**INTERROGATORY NO. 23**

For each Request for Admission set forth in the accompanying Diomed's First Requests for Admission to Total Vein Solutions, if you do not respond with a complete admission, then state the complete basis why you did not respond with a complete admission.

**RESPONSE:**

TVS specifically asserts all the general objections. Subject to each of the general objections, TVS responds that such answers are provided in the admissions.

Dated:  August 17, 2005

Respectfully Submitted,

TOTAL VEIN SOLUTIONS, LLC,
By its attorneys,


*Todd Patterson, by permission M.P.*

Merton E. Thompson
BBO #637056
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000
Fax: (617) 345-3299

Barden Todd Patterson
(admitted *pro hac vice*)
MOSER, PATTERSON & SHERIDAN, LLP.
3040 Post Oak Boulevard, Suite 1500
Houston, Texas 77056
Tel:  (713) 623-4844
Fax:  (713) 623-4846

Craig V. Depew
(admitted *pro hac vice*)
CLARK, DEPEW & TRACEY, LLP
4400 Louisiana, 16th Floor
Houston, Texas  77002
Tel: (713) 757-1400
Fax: (713) 759-1217

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of DEFENDANT TOTAL VEIN SOLUTIONS' SUPPLMENTAL RESPONSES TO PLAINTIFF DIOMED'S FIRST SET OF INTERROGATORIES was served on August 17, 2005, via overnight mail upon the following counsel of record:

> Michael A. Albert
> Michael N. Rader
> John L. Strand
> WOLF, GREENFIELD & SACKS, P.C.
> 600 Atlantic Avenue
> Boston, Massachusetts 02210
>
> Attorneys for Plaintiff Diomed, Inc.