IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TOTAL VEIN SOLUTIONS, LLC,<br><br>    Defendant. | CIVIL ACTION NO. 04-CV-10686 NMG |

**DECLARATION OF JAMES WYLIE
IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

1.  I am the president of Diomed, Inc. I submit this declaration under penalty of perjury in support of Diomed's motion for a preliminary injunction against Total Vein Solutions, LLC ("TVS").

2.  Diomed is the owner of United States patent No. 6,398,777, which discloses and claims a method of eliminating varicose veins through minimally invasive laser treatment. Since its commercial introduction by Diomed in 2002, intraluminal (also called endovenous) laser ablation ("ILA") has become the standard of care for the treatment of varicose veins, drawing acclaim from physicians and patients alike. In addition to the substantial sums that Diomed paid to acquire the '777 patent, Diomed invested additional money in the development of convenient "kits" for performing the ILA procedure.

3.  To protect its investment in the ILA technology, Diomed has sued several companies selling kits and other such products used in the patented method. In two of those actions – against AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc.

("VSI"), the two largest suppliers of ILA products other than Diomed itself – this Court granted summary judgment as to the validity and enforceability of the patent. In the same actions in March 2007 the jury found AngioDynamics and VSI liable for infringement for selling these ILA products.

4.      Diomed filed this action against TVS in April 2004, but focused its resources on the litigation against AngioDynamics and VSI, which until recently were much larger players in the market than TVS. TVS indeed has done everything in its power to delay the case – resisting Diomed's requests for discovery, for example – on the ground that the litigation against AngioDynamics and VSI should be resolved first.

5.      TVS supplies laser fibers, "procedure packs," and specialized vein access devices to doctors and hospitals for use in performing the patented procedure. Attached as Exhibit A is a true copy of a TVS brochure touting these products. I obtained this brochure at the May 2007 meeting of the International Vein Conference ("IVC") in Miami Florida. Attached as Exhibit B is a true copy of another flier that TVS distributed at the IVC meeting. Attached as Exhibits C, D, and E are true copies of catalogs that TVS distributed at the meeting.

6.      TVS regularly attends professional meetings and trade shows like those held by the Society of Interventional Radiologists, the American College of Phlebology, and the IVC. These meetings draw large numbers of doctors who have active ILA practices. In fact, the development of ILA by Dr. Robert Min (himself an interventional radiologist) and the other inventors of the '777 patent is a major reason why these conferences have become large and popular events.

7.      TVS had a triple booth (30 linear feet) at the May IVC meeting in Miami compared to Diomed's 20 foot booth. Diomed elected as a "gold level" meeting sponsor to

invest in educational components of the meeting. At those IVC meetings, TVS aggressively promoted its product for use in the patented procedure, notwithstanding the recent verdict that use of products of this type infringes the Diomed patent. TVS also distributed a special "IVC Customer Order Form" (a true copy of which is attached as Exhibit F) that listed sale prices for introducer kits, laser fibers, procedure packs, and other products used for ILA. These sale prices are significantly less – more than 25 percent in many cases – than TVS's regular prices.

8. TVS has been increasingly aggressive in trying to gain market share, particularly following the verdict against AngioDynamics and VSI. TVS's efforts at the recent IVC conference reflect this trend, but there are many other examples. For instance, a website operated by TVS, http://www.totalveinsuperstore.com, offered a "May 2007" special (a true copy of which is attached as Exhibit G) by which a customer ordering 15 laser fibers gets 2 additional fibers free. This amounts to an effective price of $88.19 per laser fiber. Following the verdict, TVS has also stepped up its campaign of emailing and faxing potential customers.

9. Indeed, TVS is the lowest-priced supplier of procedure packs and other products for performing ILA. This is due in part to their lack of investment in physician education, medical practice support, and commercial programs to drive market adoption of this revolutionary medical procedure.

10. TVS products do not meaningfully differ from the similar products sold by AngioDynamics and VSI that the jury found to infringe. When the Court enjoins AngioDynamics and VSI from further sales of these products, TVS, unless preliminarily enjoined, will move in and make many of the sales that AngioDynamics and VSI otherwise would have made. In fact, TVS has <u>already</u> capitalized on the verdict and emphasized that it

remains a cut-rate source for ILA products proven to work (as opposed to the untested products that AngioDynamics and VSI are now selling).

11.     Much like Diomed, AngioDynamics, and VSI, TVS bundles individual components together to facilitate "one-stop shopping." For instance, attached as Exhibit H is a true copy of a flier distributed at the recent IVC meeting. The flier quotes a single price for the combination of a laser fiber, an introducer, and an access needle. Likewise, attached as Exhibit I is a true copy of a fax that Dr. Steven Elias, an ILA user, forwarded to Diomed. The fax quotes a single price for the combination of a laser fiber, a needle, and an access kit. Further, it compares this price to the supposed cost of Diomed procedure kits. In fact, the Diomed pricing information is incorrect, as TVS ultimately conceded when it agreed to stop distributing the cost comparison sheet.

12.     Continuing sales by TVS will cause great harm. The materials distributed by TVS at the recent IVC conference state that doctors can obtain a laser fiber, an introducer kit, and an access needle from TVS "all for $ 131.85." (Ex. H ). This is well below the prices that Diomed offers even high-volume customers for kits containing comparable products.

13.     Diomed salespeople have been informed by a number of TVS customers that their sole reason for selecting TVS is the extremely low prices that TVS charges for its kits.

14.     Continued sales of these infringing products at these comparatively low prices, unless enjoined, will seriously erode the prices that Diomed will be able to charge. Further, charging low prices for these infringing products from now until a permanent injunction is entered at the end of the case will cause the doctors to become accustomed to paying these low prices, which do not reflect the costs of developing and commercializing the ILA method. This

will make it difficult for Diomed to raise prices to previous levels without serious resentment from customers and consequent loss of goodwill.

15. Diomed obtained exclusive rights to the '777 in order to build a business of its own. At no time have we offered any company a license to this technology, as such a step would have undercut our efforts to remain the ILA market leader. Yet TVS's sales are having the same effect.

16. Our sales representatives have emphasized that Diomed is the only company with the right to sell ILA kits and the Court will ultimately enjoin suppliers of infringing alternatives. Customers therefore have selected Diomed in order to respect intellectual property rights and guarantee security of supply. Yet, despite the verdict against AngioDynamics and VSI, customers can still purchase products (including the bare-tipped laser fibers proven to work) from TVS, and at prices even lower than those that VSI charged. Given the disparity between the price that TVS charges and the higher price (reflecting the cost of obtaining the '777 patent rights) that Diomed charges, a number of customers have complained that Diomed is "ripping them off."

17. Diomed has the capacity to obtain and sell ILA procedure kits to replace all those procedure packs, laser fibers, and related products that TVS now sells. Thus, an injunction against TVS would not jeopardize any doctor's ability to perform the ILA procedure.

Dated: June 1, 2007

_____
James Wylie