**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**BOSTON DIVISION**

| | | |
|---|---|---|
| DIOMED, INC. | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 04-10686 NMG |
| vs. | § | |
| | § | Judge Nathaniel M. Gorton |
| TOTAL VEIN SOLUTIONS, LLC, | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT'S OPPOSITION**
**TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**
~~(FILED UNDER SEAL)~~

Defendant Total Vein Solutions, LLC ("TVS") hereby opposes the request by Plaintiff

Diomed, Inc. for a preliminary injunction.

[REDACTED VERSION]

## TABLE OF CONTENTS

I.      SUMMARY ................................................................................................1

II.     FACTUAL BACKGROUND ...................................................................4
        A.      Diomed and the Other Full-Service Endovenous Laser Companies. ............4
        B.      Total Vein Solutions and Its Direct Competitors...........................................5

III.    ARGUMENTS AND AUTHORITIES....................................................7
        A.      Diomed Has Not Proven a Reasonable Likelihood of
                Success on the Merits........................................................................8
                1.      Diomed Cannot Prove Its Contributory
                        Infringement Claims. ................................................. 8
                        a.      Procedure Packs. ................................................. 8
                        b.      Laser Fibers........................................................ 11
                2.      Diomed Has Not Proven Its Inducing Infringement Claim. .......... 12
                3.      Claim 9 of the Diomed Patent Is Invalid. ....................................... 15

        B.      Diomed Will NOT Suffer Irreparable Harm in the Absence
                of a Preliminary Injunction. ........................................................ 18
        C.      The Balance of Hardships Weighs Heavily in TVS's Favor. ...................... 19
        D.      The Public Interest Strongly Weighs Against a Preliminary
                Injunction. ..................................................................................... 19

IV.     REQUEST   TO   SUBMIT   ADDITIONAL   EVIDENCE   AND
        ARGUMENT.......................................................................................... 20

V.      CONCLUSION .....................................................................................20

I.    **SUMMARY**

After concluding over two years ago that TVS posed little or no competitive threat to Diomed's marketing efforts, Diomed initially decided to pursue its patent infringement claims against two of its direct competitors, Vascular Solutions, Inc. ("VSI") and Angiodynamics, Inc. ("Angiodynamics"). Like Diomed, VSI and Angiodynamics are "full-service" endovenous laser companies, each providing physician training, lasers, disposable laser fibers, and other disposable supplies for endovenous laser surgery. While Diomed was recently able to obtain a jury verdict that the procedures then taught by VSI and Angiodynamics indirectly infringe Diomed's patent, Diomed's plans to monopolize the entire marketplace have failed. Neither Diomed nor TVS are likely to gain any significant market share or new customers from VSI or Angiodynamics. VSI now sells a specialized laser fiber—known as Bright Tip$^{TM}$—having a ceramic tip that prevents even incidental, unintended vein wall contact. Angiodynamics is said to also have recently begun to sell its own NeverTouch$^{TM}$ specialized laser fiber, again designed to prevent even inadvertent contact. Thus, the jury verdict and any permanent injunction in the VSI/Angiodynamics case are unlikely to disturb the status quo.

Diomed now directs its legal efforts against TVS, one of several lower-cost suppliers of disposable medical devices that may be used for endovenous laser surgery. It is important to note that the use of lasers and laser fibers to perform endovenous laser procedures—and thereby cure varicose veins—was not novel at the time of Diomed's alleged invention. Further, Diomed's asserted patent claims do not cover *all* methods of performing endovenous laser procedures; its claims are limited to one *particular* method of performing an endovenous laser procedure. Nevertheless, Diomed takes the overly-broad position that its claims cover all effective endovenous laser procedures for treating varicose veins, and also that Diomed is

entitled to a monopoly in the market to supply physicians with staple items of commerce, such as procedure packs, laser fibers, and vein access kits. Diomed's position finds no support in law or fact.

Diomed cannot establish that it is entitled to the "drastic and extraordinary relief" of a preliminary injunction. First, it cannot show a reasonable likelihood of success on the merits, for several reasons. Diomed's contributory infringement theory must fail because the accused disposal medical supplies sold by TVS have substantial noninfringing uses. For example, the procedure packs sold by TVS may be used with the undeniably noninfringing lasers and laser fibers now sold by VSI, as well as with the undeniably noninfringing lasers and sapphire-tipped laser fibers sold by CoolTouch. Diomed's own sales literature confirm that the laser fibers sold by TVS are staple items of commerce that may be used for neurosurgery, gastroenterology, general surgery, and other unpatented medical procedures. Diomed's inducing infringement claims must also fail for similar reasons. TVS personnel do not train or instruct physicians as to how they should perform endovenous laser procedures. TVS merely supplies the particular procedure packs and other staple medical supplies requested by physicians. TVS has no specific intent that physicians do any particular acts, much less that they do any acts that may or may not constitute direct infringement of the Diomed patent.

Further, Diomed cannot meet its burden to show a reasonable likelihood of success on the merits because TVS can now demonstrate without question that Diomed's asserted method claims are invalid. As detailed herein, TVS's invalidity showing does not rely upon the incomplete arguments and sparse prior art previously proffered by counsel for VSI and Angiodynamics. Rather, TVS bases its invalidity position upon (a) previously undisclosed prior art concerning the broad applicability of tumescent anesthesia; (b) new caselaw from the United

States Supreme Court regarding the proper legal standards for showing obviousness; and (c) the recent admissions and positions taken by Diomed itself concerning vein-wall contact and tumescent anesthesia.

Second, Diomed cannot make the required showing that it will be irreparably harmed in the absence of an injunction. Diomed's price erosion and market share theories are premised upon a number of demonstrably false assumptions. First, Diomed assumes both that all physician customers of VSI and Angiodynamics now "belong to Diomed," and that TVS will somehow be able to swoop in and "steal" these customers in the absence of an injunction. The market reality is quite different. VSI and Angiodynamics have now both modified their products in a manner against which even Diomed cannot assert infringement, and both are already competing vigorously with their modified products. Thus, Diomed is not poised to gain substantial market share. Further, Diomed's irreparable harm theory assumes the absence of TVS's several direct competitors—numerous other lower-cost suppliers of competitive procedure packs and laser fibers. These lower-cost suppliers charge prices equal to or slightly less than those of TVS, and these suppliers can be expected to continue to compete vigorously in the marketplace, notwithstanding competition from TVS. Thus, Diomed assertion of irreparable harm lacks substantial foundation.

Third, the balance of hardships heavily weights against the entry of preliminary relief. The requested preliminary injunction would undeniably devastate TVS's business. However, as noted above, the requested relief would likely do little to help Diomed's bottom line. Many of TVS's customers, especially those that are cost-conscious and those who have not had positive experiences with Diomed, are unlikely to ever buy their disposable supplies from Diomed. Any injunction is likely to drive these customers to TVS's numerous lower-cost direct competitors, or

alternatively to VSI, Angiodynamics, and/or Cooltouch.

Fourth, the public interest favors heavily against the grant of any injunction. Many physicians prefer the particular disposable products supplied by TVS to those of Diomed, and physician preference is a well-recognized public interest factor weighing against the issuance of injunctive relief. Further, the grant of an injunction would implicate serious public health issues relating the availability of varicose vein treatments to low-income and indigent individuals.

## II.    FACTUAL BACKGROUND

### A.    Diomed and the Other Full-Service Endovenous Laser Companies.

Diomed is a leading supplier of a number of products and services relating to endovenous laser surgery. Diomed employs a sizeable staff of approximately 80 individuals to sell physician training services, laser energy generating devices or laser consoles (hereafter "lasers"), vein viewers, disposable laser fibers and certain other disposable medical supplies used by physicians for endovenous laser surgery.

Diomed competes directly against several other "full-service" endovenous laser companies, namely VSI, Angiodynamics and New Star Lasers, Inc. ("CoolTouch"). Each of these three companies also sells physician training, lasers, disposable laser fibers, and other disposable supplies for endovenous laser surgery. (See VSI Materials, Ex. A; Angiodynamics Materials, Ex. B; CoolTouch materials, Ex. C).[1] Market shares and other information concerning Diomed, VSI, Angiodynamics, and CoolTouch are described in a page from Diomed's website attached as Exhibit E. According to Diomed, TVS is a "minor participant." (Id.).

Diomed sued VSI and Angiodynamics during the first quarter of 2004. Later, in October

---

[1]    Dornier MedTech America, Inc. ("Dornier") sells lasers that are advertised for multiple medical applications, including endovenous laser procedures. (Ex. D). Diomed filed a complaint for patent infringement litigation against Dornier on March 29, 2007, but apparently the complaint has not yet been served. (07-cv-10612-NMG).

of 2004, Diomed also filed suit against CoolTouch. Shortly thereafter, Diomed's actions against Angiodynamics and VSI were consolidated, and the consolidated action was prosecuted in earnest, culminating in a jury trial in March, 2007.[2]

In response to Diomed's jury verdict, VSI and Angiodynamics quickly announced plans to modify their product lines. On April 12, 2007, VSI launched a modified laser fiber—known as Bright Tip[TM]—having a ceramic tip designed to prevent even unintended contact between the laser-emitting surface of the fiber and the vein wall. (See VSI Press Release dated Apr. 12, 2007, Ex. F). Additional technical information concerning the VSI Bright Tip[TM] fiber is provided in attached declaration of VSI director of process development, Mr. Jonathan Hammond. (04-CV-10019, D.I. 258, Ex.G). Similarly, on June 6, 2007, Angiodynamics announced that it had "resumed active participation within the laser vein ablation market with the commencement of NeverTouch shipments on June 1, 2007...." (Angiodynamics Press Release dated June 6, 2007, Ex. H).

### B.    Total Vein Solutions and Its Direct Competitors.

In contrast to these full-service laser companies, Defendant TVS does not attempt to train physicians or sell lasers. (Centanni Decl. ¶ 2, Ex. I). Rather, TVS simply supplies vein physicians with generic, unpatented disposable medical supplies. (Id. ¶ 3). As described in TVS's product catalogs, TVS sells a number of generic "procedure packs,"[3] staple laser fibers, generic vein access devices, and miscellaneous other surgical supplies, including as drapes, surgical gowns, syringes, and hypodermic needles. (Procedure Pack Catalog, Ex. J; Laser Fiber

---

[2]    During the majority of this time period, Diomed's actions against CoolTouch and TVS remained inactive.

[3]    The various procedure packs supplied by TVS do not include laser fibers. In contrast, the procedure packs supplied by Diomed and the other full-service endovenous companies generally do contain laser fibers.

and Access Device Catalog, Ex. K; Surgical Supply Catalog, Ex. L).

A procedure pack is simply a collection or package of medical devices that a physician may wish to use in performing a medical procedure. (Centanni Decl. ¶ 4, Ex. I). The procedure packs supplied by TVS typically consist of a number of ordinary, unpatented medical devices. TVS's Universal "TVS 4000" procedure pack is a collection of drapes, towels, sponges, needles, syringes, and ancillary products. (Procedure Pack Catalog 1, Ex. J). Other procedure packs add different types of access needles, syringes, introducer kits, micro-puncture kits, gowns and/or other components. (Id.). In all, TVS supplies approximately 29 different procedure packs. (Id.) This large number of procedure packs is dictated by the particular preferences of the various vein physicians who order packs. (Centanni Decl. ¶ 5, Ex. I). If a physician prefers a particular combination of components in a procedure pack, TVS will strive to satisfy that physician's preferences with either an existing procedure pack or with a new, custom-prepared procedure pack. (Id.). In this way, a physician performing vein procedures can generally be assured of receiving a procedure pack tailored to his or her preferences.

Since TVS supplies products to vein physicians, it is only natural that TVS advertises and attends medical trade shows frequented by vein physicians. However, unlike Diomed and the other full service endovenous laser companies, TVS does not assist physicians in learning how to perform vein procedures (including but not limited to endovenous laser procedures). (Id. ¶ 6). Rather, TVS provides disposable products to vein physicians who have previously acquired their vein procedure training from others. (Id.).

TVS competes vigorously with a number of lower-cost suppliers of procedure packs and laser fibers. For example, TVS competes against The Vein Store (procedure packs) (Ex. M), and ePhlebology (distributing laser fibers from Laser Peripherals, micropuncture kits from Cook

Medical) (Ex. N), Cook Medical (misc. "products for varicose vein ablation") (Ex. O).  Other
competitive procedure pack suppliers include Merit Medical (Ex. P), Avid Medical (Ex. Q),
Professional Hospital Supply (PHS) (Ex. R), MedQuest (Ex.S), and others.  Many of these
suppliers are known to attend the same medical trade shows attended by TVS, Diomed, VSI,
Angiodynamics and CoolTouch.  (See Exhibitor List, 2007 International Vein Congress
(including The Vein Store, Laser Peripherals, ePhlebology and Cook Medical), Ex. T).  Most of
these suppliers price their products at or below the prices of TVS.  (Centanni Decl. ¶ 7, Ex. I).

## III.    ARGUMENTS AND AUTHORITIES

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely
granted." Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004).
To obtain a preliminary injunction in the district court, the moving party must demonstrate (a) a
reasonable likelihood of success on the merits; (b) irreparable harm in the absence of a
preliminary injunction; (c) a balance of hardships tipping in the moving party's favor; and (d) the
injunction's favorable impact on the public interest.  Id. at 1324-25.  While granting a
preliminary injunction requires analysis of all four factors, a trial court may deny a motion based
on a patentee's failure to show any one of the four factors.  E.g., Guttman, Inc. v. Kopykake
Enters., 302 F.3d 1352, 1356 (Fed. Cir. 2002).

Moreover, the purpose of a preliminary injunction is to protect the status quo until a trial
on the merits. E.g., University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  Accordingly,
where a proposed injunction would disturb the parties' relative positions, many courts have
required a movant to make a heightened showing on each factor.  See, e.g., Litton Systems, Inc.
v. Sundstrand Corp., 750 F.2d 952, 961 (Fed. Cir. 1984); Smith Int'l, Inc. v. Hughes Tool Co.,
718 F.2d 1573, 1578 (Fed. Cir. 1983) ("A preliminary injunction will normally issue only for the

purpose of preserving the status quo and protecting the respective rights of the parties pending final disposition of the litigation."); Summum v. Pleasant Grove City, 483 F.3d 1044, 1049-50 (10th Cir. 2007) (requiring that grants of preliminary injunctions that alter the status quo receive close scrutiny); Tom Doherty Associates, Inc. v. Saban Entertainment, Inc. 60 F.3d 27, 33-34 (2nd Cir. 1995) (movant must meet a higher standard).

### A.    Diomed Has Not Proven a Reasonable Likelihood of Success on the Merits

If a defendant raises a substantial question concerning either infringement or validity, a preliminary injunction should not issue.    Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

### 1.    Diomed Cannot Prove Its Contributory Infringement Claims.

A showing of contributory infringement requires, among other things, a showing that an accused product has no substantial noninfringing uses.  E.g., Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1061 (Fed. Cir. 2004); 35 U.S.C. § 271(c).

### a.    Procedure Packs.

To show contributory infringement at trial, Diomed would have the burden to prove that each pack has no substantial noninfringing uses.[4]  Diomed has not (and cannot) make this showing because the various procedure packs supplied by TVS are generic and can be used by vein doctors to perform a variety of noninfringing medical procedures.

As an initial matter, the following procedure packs do not contain any access devices (such as 5 French introducer sheaths):  TVS 4000 ("Universal Pack"); TVS 4007; TVS 4014; TVS 4017; TVS 4020; TVS 4024; TVS 4111; TVS 4300 (Base Pack "A"); TVS 4400 (Base

---

[4]    Although Diomed attempts to blur the differences between a procedure pack and a laser fiber, it cites no authority to suggest that merely advertising two products in the same brochure somehow converts two products into a single product, nor does it provide any evidence to suggest that TVS has ever sold a procedure pack that includes a laser fiber.

Pack "B"); TVS 4401 (Base Pack "C").  (See TVS Proc. Pack Catalog, Ex. J; Centanni Decl. ¶ 8, Ex. I).  Accordingly, there can be no dispute that these packs are suitable for non-laser microphlebotomy procedures; and that these packs may also be used in non-laser vein ablation procedures in conjunction with the radio-frequency catheters supplied by third party VNUS Medical Technologies, Inc. ("VNUS").  (Centanni Decl. ¶ 8, Ex. I).  Diomed's alleged inventor Dr. Navarro does not and cannot claim that these packs contain components that collectively would not be used for any procedure other than endovenous laser procedures.  (See Navarro Decl. ¶ 8, Diomed's P.I. Brief (omitting reference to the above procedure packs)).[5]  Thus, Diomed's contributory infringement claims against these packs must fail.  See Golden Blount, 365 F.3d at 1061.[6]

Next Diomed takes the position that the remaining procedure packs supplied by TVS can only be used for endovenous laser procedures, since they are said to include 5 French introducer sheaths.  (See Diomed P.I. Brief 9).  Even if these other packs were only suitable for endovenous laser procedures (which is not the case), Diomed's contributory infringement claims must still fail.  This is because the procedure packs supplied by TVS are compatible with the lasers and noninfringing laser fibers of VSI and CoolTouch.

To prove up its contributory infringement claims, Diomed must show direct infringement by physicians using TVS procedure packs with each of the following laser fibers or laser/laser fiber combinations:

---

[5]    Diomed's requested relief would preclude the sale of these procedure packs.  (D.I. 47).

[6]    Similarly, the following procedure packs can also be used in vein procedures in conjunction with VNUS radio-frequency catheters:  TVS 4003 ("Universal Pack"); TVS 4005 ("Universal Pack"); TVS 4006; and TVS 4013.  (See Centanni Decl. ¶ 8, Ex. I).  Accordingly, Diomed's contributory infringement claims against these four packs must also fail.

583947-1                                            9

1.    VSI Bright Tip[TM] laser fibers;

2.    CoolTouch 1320 nm laser and CoolTouch SappFire[TM] sapphire-tipped laser fibers;

3.    CoolTouch 1320 nm laser and CoolTouch silica-on-silica laser fibers;

4.    VSI and/or Angiodynamics "dual clad" laser fibers;

5.    Single-clad laser fibers from other suppliers; and

6.    VSI and Angiodynamics single-clad laser fibers
      (i.e., the only fibers previously litigated).

Diomed does not come close to meeting its burden.[7] TVS procedure packs can and now have been used with the undeniably noninfringing Vascular Solutions Bright Tip[TM] laser fibers. ██████████████ Diomed's failure to offer any proof of direct infringement with respect to the Bright Tip[TM] laser fiber is by itself <u>fatal</u> to Diomed's contributory infringement claims. <u>See Golden Blount</u>, 365 F.3d at 1061.

Further, TVS procedure packs are used with the CoolTouch 1320 nm laser, in conjunction with the noninfringing CoolTouch SaphFire[TM] sapphire-tipped laser fibers. (<u>See</u> ██████████████). The SaphFire[TM] fiber includes a "protected" sapphire tip. (Instructions for Use, Ex. W). This sapphire cover is believed to likewise prevent any physical contact between the laser energy emitting section of the optical fiber and the vein wall. Diomed's failure to offer any proof of direct infringement the SaphFire[TM] laser fiber is independently <u>fatal</u> to Diomed's contributory infringement claims.

Moreover, Diomed P.I. Brief fails to address any of the important technical differences between on the one hand, the CoolTouch silica-on-silica laser fibers and the VSI and/or

---

[7]    TVS has not yet had an opportunity to examine the recently-launched Angiodynamics NeverTouch[TM] laser fiber. In the event that the Angiodynamics fiber is compatible with the procedures packs supplied by TVS, then Diomed would have the burden to prove that the use of this particular laser fiber also directly infringes the Diomed patent.

Angiodynamics "dual clad" laser fibers; and on the other hand, the more conventional single cladding laser fibers. While Diomed asserts in a conclusory manner that CoolTouch users infringe Diomed's patent in the same manner as Angiodynamics and VSI, Diomed must be aware that the non-polymeric cladding on the CoolTouch silica-on-silica laser fibers resists "burn-back" when used endovenously, thereby preventing the formation of uncoated sidewalls on the fiber that could inadvertently contact a vein wall.[8, 9] Similarly, Diomed presents no infringement evidence for the VSI and/or Angiodynamics "dual clad" laser fibers, which are believed to also provide some burn-back resistance. These fibers are believed to have been introduced in 2006, after the close of discovery in Diomed's VSI/Angiodynamics litigation.

Since Diomed has not provided the required proofs for each of the above six laser fibers or laser/laser fiber combinations, Diomed's contributory infringement claims must fail.

### b.    Laser Fibers.

To show contributory infringement at trial, Diomed would also have the burden to prove that the laser fibers supplied by TVS have no substantial noninfringing uses. Diomed cannot

---

[8]    Further, there is a substantial legal question concerning claim construction that is yet to be addressed with respect to the CoolTouch accused products. TVS (and most likely also CoolTouch) asserts that the claim term "means for emitting laser energy," which is present in all asserted claims, must be limited to the particular corresponding laser emitting structures recited in the specification of the Diomed patent. See 35 U.S.C. § 112(6); Wenger Mfg., Inc. v. Coating Mach. Sys., Inc., 239 F.3d 1225, 1233 (Fed. Cir. 2001). The laser emitting structures referenced as being patent of the alleged invention of the Diomed patent are those emitting laser energy having wavelengths in the ranges of "about 500 nanometers to about 1100 nanometers," and about 532 nanometers to about 1064 nanometers." See, e.g. the '777 Patent, at column 6, lines 13-16. Accordingly, the asserted claims are all limited as a matter of law to the use of laser energy in the broader range of about 500 nm to about 1100 nm. As a threshold matter, therefore, CoolTouch endovenous laser procedures are noninfringing as a matter of law because they take place using laser energy having a wavelength that is outside of the range claimed in the Diomed patent.

[9]    It is perhaps ironic that Diomed's preliminary injunction motion against TVS has forced TVS, rather than CoolTouch, to show that the use of CoolTouch's proprietary 1320 nm laser technology and proprietary laser fibers do not directly infringe Diomed's patent. See also, Total Vein Solutions' Am. Opp'n to Diomed's Mot. to Compel and Cross-Mot. to Stay This Case Pending Resolution of Diomed's Lawsuits Against the Four Full-Service Endovenous Laser Companies, D.I. 47 (arguing that a stay of the present case would be appropriate to prevent this unusual situation).

make the required showing, because the particular plastic-clad silica laser fibers sold by TVS are the same staple fibers that have been used for other medical applications for many years.

TVS buys a significant portion of its laser fibers from ████████████████████ (Centanni Decl. ¶ 9, Ex. I).  As noted by ███████████████████ the laser fibers ██████████████████ have a wide range of medical applications, including urology, plastic surgery, radiology, dermatology, gastroenterology, gynecology, podiatry, orthopedics and neurosurgery. ████████████████████████ sells these very laser fibers to other customers, including various laser fiber distributors, for use in these applications.  (Id. at ¶ 5; see also, ███████████████████ (indicating multiple general medical applications), ██████  Similarly, according to Diomed's own sales literature for its Diomed*plus* Diode Laser Platforms, the Diomed 30 laser and laser fibers include the following applications, in addition to endovenous laser treatments: otorhinolaryngology (ENT), laparoscopic gynecology, neurosurgery, gastroenterology and transdermal (with a "spot handpiece").  (Diomed Laser Sales Brochure, last page, Ex. Z). Accordingly, any contributory infringement claim against the laser fibers supplied by TVS must also fail.

### 2.    Diomed Has Not Proven Its Inducing Infringement Claim.

A showing of inducing infringement requires the following:   (a) acts of direct infringement; (b) proof that the accused infringer intended to cause the acts of direct infringement; and (c) proof that the accused infringer intended to encourage the direct infringement.  DSU Med. Corp. v. JMS Co., 47 F.3d 1293, 1305-06 (Fed. Cir. 2006) (en banc) (clarifying the law of inducing infringement).  This third element requires an affirmative intent to

cause direct infringement; where the accused indirect infringer does not honestly believe that its product infringes, there is no intent to infringe. See id. at 1306-07.

Diomed cannot make the required showing on any of the above three elements. First, to a large extent, Diomed does not even try to show direct infringement with respect to the use by physicians of the procedure packs and laser fibers supplied by TVS. As noted in the previous section, TVS supplies a large number of procedure packs, some of which are not used for endovenous laser procedures and all of which may be used in conjunction with the undeniably noninfringing laser fibers of VSI and CoolTouch.

Second, Diomed has not made any showing that TVS encourages or intends to encourage physicians performing endovenous vein procedures to perform the acts that would result in direct infringement of the Diomed patent. Diomed's patent claim requires physical contact between the uncoated tip of a laser fiber and a vein wall. Diomed's P.I. Brief, at 13. However, Diomed offers no objective evidence to suggest that TVS intends that physicians deliberately place the uncoated tip of a laser fiber in physical contact with a vein wall. As noted previously, TVS does not train physicians to perform any particular medical procedure.[10] Unlike in the VSI and Angiodynamics litigations, the physicians who buy and use disposable supplies from TVS are licensed medical professionals who already know how to perform vein procedures. (Centanni

---

[10] The only evidence Diomed has mustered in support of its assertion that TVS has induced physicians to infringe the Diomed patent consists of a single Dornier video tape that TVS sent to ten customers in March of 2004, as a "bonus" for purchasing five laser fibers. (See Diomed's P.I. Brief, at 12; Centanni Decl. ¶ 11, Ex. I). That video tape was consisted of approximately 50 minutes of instruction for using duplex ultrasound to diagnose vein disease, followed by approximately 5 minutes showing a Dornier-affiliated physician perform an endovenous laser procedure. (Id.). Vein wall contact is not mentioned in the video. (Id.). TVS was not even aware of the reference to endovenous laser procedures in the tape at the time it sent out the tapes. (Id.). As soon as TVS became aware that the tape contained any reference to endovenous laser procedures, TVS asked the eleven ten recipients to return or destroy the tape. (Id.). It is a stretch for Diomed to compare this TVS activity to the formal, well-planned physician instruction programs run by VSI and Angiodynamics over the last 4-6 years.

Decl. ¶ 10, Ex. I).  These physicians have no need for medical advice from TVS, and TVS has no desire (or even ability) to provide such advice.  (Id.)  In many instances, TVS personnel may not even be aware of how its physician customers may be using TVS supplies.  (Id.).  See also DSU Med. Corp., 47 F.3d at 1305 ("The 'mere knowledge of possible infringement by others does not amount to inducement; specific intents and action to induce infringement must be proven.'").

Further, TVS has no specific intent that physicians using its products directly infringe the Diomed claim.  Diomed bases its inducement theory upon two related premises, neither of which can be supported by Diomed.  First, Diomed takes the position that all forms of endovenous laser procedures necessarily infringe the Diomed patent.  TVS has shown above that this premise is not true.  At least the modified laser fibers of VSI, Angiodynamics and CoolTouch can be used to perform endovenous laser procedures in a manner against which even Diomed cannot claim infringement.

Diomed's second premise is that it would somehow be unreasonable for TVS not to accept Diomed's world view that all endovenous laser procedures must infringe the Diomed patent.  This is important because the mental state of TVS is placed directly at issue by Diomed's inducing claims.  Prior to the jury verdict in the VSI/Angiodynamics case, TVS reasonably believed that all endovenous laser procedures, including those performed with tumescent anesthesia, did not involve physical contact between the laser energy emitting tip of a laser fiber and the vein wall.  (Centanni Decl. ¶ 12, Ex. I).  Rather, TVS reasonably believed that the procedure works via transmission of laser energy to blood, leading to superheated steam bubbles that lead to circumferential heating of the vein wall.  (Id.).  Having reviewed the transcripts from the VSI/Angiodynamics case, TVS continues to hold the same view.  (Id.).  TVS understands that the jury in that case was ultimately required to decide between conflicting expert testimony

as to how to properly interpret Dr. Proebstle's ultrasound picture of a laser fiber ~~with a view~~ *within a vein*. (Id.). While TVS respects that jury verdict, it is not unreasonable for TVS to disagree with it. Since TVS continues to hold an honest view that the use of unmodified bare-tipped laser fibers does not infringe the Diomed patent, and since TVS now believes that the modified tip laser fibers of VSI, Angiodynamics and CoolTouch do not infringe the Diomed patent, TVS cannot be said to have the requisite specific intent to indirectly infringe the Diomed patent. DSU Med. Corp., 47 F.3d at 1307. For this additional reason, Diomed's has failed to prove inducing infringement.

### 3. Claim 9 of the Diomed Patent Is Invalid.

Asserted claim 9 is now anticipated by Dr. Puglisi's article entitled "Application of the ND-YAG laser in the treatment of varicose syndrome" from the September Edition of Phlebology '89 ("the Puglisi Article") (Ex. AA), in view of Diomed's statements and admissions made during the recent VSI/Angiodynamics case.

Anticipation is shown when every claimed limitation is found either expressly or inherently in a single prior art reference. E.g., In re Schreiber, 128 F.3d 1473, 1477 (Fed. Cir. 1997). A feature in the prior art need not be appreciated to be inherently present. E.g., Schering Corp. v. Geneva Pharma., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003).

The Puglisi Article expressly discloses "inserting a means for emitting laser energy into a blood vessel at a puncture site...." (Puglisi Article at 840-41, Ex. AA ("The procedure we have developed calls for introducing a 1.7 mm diameter optical fiber into the saphenous vein, connected to [a] model 2100 Sharplan Nd-YAG laser apparatus.")).[11]

---

[11]    Diomed may attempt to assert without any real evidence that the referenced "1.7 mm diameter optical [laser] fiber" is somehow a "covered" laser fiber that is different from the claimed emitting means bare-tipped laser fiber. The word "covered" does not appear anywhere in the Puglisi Article. Accordingly, the

The Puglisi Article also expressly discloses "emitting laser energy into the blood vessel...." (Puglisi Article at 841 ("[T]o alter the intimal and medial layers of the vein [wall], we withdraw the fiber backwards and produce a series of variably spaced (2-5 cm) pulses [of laser energy])).

The Puglisi Article is silent as to ~~where~~ whether "the laser emitting section of the emitting means" is placed into intraluminal contact with the blood vessel wall.[12]  However, there is no doubt that the endovenous laser procedure disclosed and taught in the Puglisi Article was effective in that it achieved the desired full closure of the saphenous vein.  (Puglisi Article at 841 ("The total absence of blood in the vessel of the saphenous vein ...")).

Diomed took the position during the VSI/Angiodynamics litigation that the only effective way to perform endovenous laser procedures is with contact between the fiber tip and the vein wall.  (04-CV-10019, D.I. 233, 128:8-14, 137:22-138:1, Ex. BB).  Diomed may not now withdraw from its earlier position.  E.g., Thore v. Howe, 466 F.3d 173, 180-82 (1st Cir. 2006); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996).

Simple logic dictates that since the Puglisi Article discloses an effective endovenous laser procedure, and since as claimed by Diomed endovenous laser procedures are only effective if there is contact between the fiber tip and the vein wall, then the endovenous laser procedure disclosed in the Puglisi Article must have inherently featured contact between the fiber tip and the vein wall.  See Schering Corp., 339 F.3d at 1377 (inherent features of the prior art need not be recognized).  As such, the Puglisi Article expressly or inherently discloses each limitation in

---

Court should reject any attempt by Diomed to use extrinsic evidence to change the plain disclosure provided in this article.

[12]  ~~In~~ If the endovenous laser procedure of the Puglisi Article does not involve fiber tip-vein wall contact, then the disclosed procedure would not infringe the Diomed patent; the procedure would be another substantial noninfringing use for the disposable procedure packs and laser fibers supplied by TVS.

claim 9 of the Diomed patent. It is therefore invalid. In re Schreiber, 128 F.3d at 1477.

In the event that Diomed is somehow able to convince the Court that the Puglisi Article does not inherently disclose fiber tip-vein wall contact and/or compression of the vein to be treated, then asserted claim 9 would be obvious by reason of the Puglisi Article, in light of either or both of the following articles regarding tumescent anesthesia: (a) Cohn et al., Ambulatory Phlebectomy Using the Tumescent Technique for Local Anesthesia" from Phlebology (1995) ("the Cohn Article"), Ex. CC; and (b) Proebstle et al., "High Ligation and Stripping of the Long Saphenous Vein Using Tumescent Technique for Local Anesthesia" from Phlebology (Jan. 1998) ("the Proebstle Article"), Ex. DD.

The Supreme Court recently reinforced the need for caution in granting a patent based upon the combination of elements found in the prior art. KSR Int'l Co. vs. Teleflex Inc., 127 S.Ct. 1727, 1739 (2007). The Puglisi Article expressly discloses all limitations of claim 9 of the Diomed patent, except for physical contact between the fiber tip and the vein wall. The Cohn Article teaches the many benefits of using tumescent anesthesia, rather than other forms of anesthesia, during a varicose vein procedure known as ambulatory phlebectomy. (Ex. CC, 317-18). These benefits include reduced pain during application of the anesthesia, as well as "quick and effective regional local anesthesia using a large area." (Id.). Similarly, the Proebstle Article teaches the benefits and effectiveness of tumescent anesthesia during a varicose vein procedure known as high ligation and stripping. (Ex. DD, 152). The Puglisi Article states that the disclosed endovenous laser procedure may be performed using any of a number of anesthesia techniques, thereby inviting the physician to use an anesthesia technique of his choice. (Ex. AA, 840). Accordingly, it would obvious to physicians performing endovenous laser procedures according to the Puglisi Article, to employ tumescent anesthesia, as taught and suggested in the

Cohn and the Proebstle Articles, in order to obtain the many benefits of tumescent anesthesia. Alza Corp. v. Mylan Labs., Inc., 464 F.3d 1286, 1291 (2006) ("There is flexibility in our obviousness jurisprudence because a motivation may be found implicitly in the prior art. We do not have a rigid test that requires an actual teaching to combine..."). Since Diomed took the position during the VSI/Angiodynamics litigation that the use of tumescent anesthesia ensures contact between the vein wall and the fiber tip (04-CV-10019, D.I. 233, 134:21-25; 135:10-13, Ex. EE), Diomed cannot now deny vein wall contact when tumescent anesthesia is used in the endovenous laser procedure of the Puglisi Article.  See Thore v. Howe, 466 at 180-82. Accordingly, claim 9 of the Diomed is invalid as obvious.

### B.    Diomed Will NOT Suffer Irreparable Harm in the Absence of a Preliminary Injunction.

A party requesting preliminary relief must establish irreparable harm.  E.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343 (Fed. Cir. 2001).  In light of eBay Inc. v. MercExchange, LLC, 126 S.Ct. 1837 (2006), it is no longer appropriate to infer irreparable harm.  E.g., Chamberlain Group, Inc. v. Lear Corp., No. 05-C-3449, 2007 WL 1017751, *5 (N.D. Ill. March 30, 2007)

Diomed's irreparable harm theories rest upon its mistaken view that Diomed is on the verge of otherwise controlling the marketplace.  With VSI and Angiodynamics now competing vigorously with modified noninfringing products, Diomed cannot now reasonably make such a claim.  Further, with the presence of numerous other lower-cost suppliers of procedure packs and other disposable items—companies that compete directly with TVS—Diomed cannot now reasonably claim that its proposed injunctive relief will result in the transfer of TVS's customers to Diomed.

Further, Diomed's claim that the presence of TVS in the marketplace will embolden other

companies to enter the marketplace, is curious. First, Diomed's claim to monopoly rights in the market for disposable medical supplies implies that Diomed's patent rights extend to all versions of endovenous laser procedures. That presumption is demonstrably false. Second, Diomed's purported recent fear of emboldened competitors is misleading. Diomed has long known about the entry of these "other companies" who are alleged to infringe by providing lower-cost disposable medical supplies. For Diomed to claim that price erosion and loss of market share is a new problem is specious. In short, Diomed cannot show irreparable harm.

### C.    The Balance of Hardships Weighs Heavily in TVS's Favor.

Diomed does not attempt to refute that the requested preliminary injunction would destroy TVS's business. Nor does it provide any real evidence that the proposed injunction is likely to benefit Diomed's bottom line.[13] Any injunction is likely to drive TVS customers to TVS's numerous lower-cost direct competitors, or alternatively to VSI, Angiodynamics, and/or Cooltouch. As noted above, many of TVS's customers, especially those that are cost-conscious and those who have not had positive experiences with Diomed, are unlikely to ever buy their disposable supplies from Diomed. ███████████████ Accordingly, Diomed has not shown that the balance of hardships in any way tips in its favor.

### D.    The Public Interest Strongly Weighs Against a Preliminary Injunction.

Both the Federal Circuit and this District recognize that public harm may flow from an injunction barring physicians from using the medical products of their choice. Datascope Corp. v. Kontron Inc., 786 F.2d 398, 401 (Fed. Cir. 1986) (citing Datascope Corp. v. Kontron, Inc., 611 F. Supp. 889, 895 (D. Mass. 1985)). Since TVS offers a large number of different procedure

---

[13]    Instead of arguing the merits, Diomed's P.I. Brief devolves into false and inflammatory allegations that TVS is wrongfully competing, and that TVS "stole" the idea for TVS's custom procedure packs (all 27+ of them) from Diomed (who supply physicians with a choice of only two procedure packs).

packages tailored to provide physicians with the precise components they prefer for their vein procedures, it is not surprising that many physicians favor the procedure packs and other disposables supplied by TVS. ■■■■■■■■■■■■■■■■■ Moreover, many physicians are known to prefer TVS's disposable medical supplies due also to TVS's superior customer service. ■■■■■■■■■■■■■■■■■■■■■■■■■■ Thus, the policy favoring physician preferences weighs heavily against the requested injunctive relief.

Further, the continued economic availability of endovenous laser procedures to the indigent is another important public interest factor. Untreated varicose veins are a significant public health concern, as untreated veins can cause skin ulcers and severe venous insufficiency. ■■■■■■■■■■■■ A preliminary injunction could force endovenous laser practitioners to pay inflated costs for Diomed procedure packs. This would escalate the cost of endovenous laser procedures, very likely requiring an end to some practitioners' policies of offering free or discounted procedures to the indigent. ■■■■■■■■■■■

## IV.    REQUEST TO SUBMIT ADDITIONAL EVIDENCE AND ARGUMENT

TVS anticipates that it will request leave to submit additional evidence and argument in the near future. Diomed declined TVS's request for a two-week extension of time to prepare and file the present opposition brief. TVS requested this relief in part because it is in the process of gathering evidence from third parties, many of whom have limited availability during the summer months, and in part as a professional courtesy. TVS's Houston patent counsel are both scheduled to appear at a claim construction hearing in Marshall, Texas, later this week.

## V.    CONCLUSION

Diomed's request for preliminary relief should be denied, as Diomed has not made the required strong showing on any of the four preliminary injunction factors.

Date:  __June 27, 2007__               Respectfully Submitted,

                                       TOTAL VEIN SOLUTIONS, LLC,

                                       By its attorneys,


                                       ___/s/  Merton E. Thompson
                                       Merton E. Thompson
                                       BBO #637056
                                       BURNS & LEVINSON LLP
                                       125 Summer Street
                                       Boston, MA 02110
                                       Tel: (617) 345-3000
                                       Fax: (617) 345-3299

                                       Barden Todd Patterson
                                       (admitted *pro hac vice*)
                                       Henry M. Pogorzelski
                                       (admitted *pro hac vice*)
                                       PATTERSON & SHERIDAN, LLP
                                       3040 Post Oak Boulevard, Suite 1500
                                       Houston, Texas 77056
                                       Tel:  (713) 623-4844
                                       Fax:  (713) 623-4846

                                       Craig V. Depew
                                       (admitted *pro hac vice*)
                                       CLARK, DEPEW & TRACEY, LLP
                                       4400 Louisiana, 16th Floor
                                       Houston, Texas  77002
                                       Tel: (713) 757-1400
                                       Fax: (713) 759-1217

                                       ATTORNEYS FOR DEFENDANT
                                       TOTAL VEIN SOLUTIONS, INC.


## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this *Total Vein Solutions'*

*Opposition to Diomed's Motion for Preliminary Injunction*  to be served through the ECF system

583947-1                                      21

and by electronic mail upon the following counsel of record:

> Michael A. Albert
> Michael N. Rader
> John L. Strand
> WOLF, GREENFIELD & SACKS, P.C.
> 600 Atlantic Avenue
> Boston, Massachusetts  02210
> Tel:  (617) 646-8000
> Fax:  (617) 646-8646
>
> ATTORNEYS FOR PLAINTIFF DIOMED, INC.

> __/s/ Merton E. Thompson__
> Merton E. Thompson