IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOTAL VEIN SOLUTIONS, LLC, <br><br> Defendant. | CIVIL ACTION NO. 04-CV-10686 NMG |

**[PROPOSED] REPLY IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

Dated: <u>July 5, 2007</u>

Michael A. Albert
Michael N. Rader
John L. Strand
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

COUNSEL FOR
PLAINTIFF DIOMED, INC.

# TABLE OF CONTENTS

I. LIKELIHOOD OF SUCCESS ON THE MERITS ........ 2

A. The Undisputed Facts Establish Infringement ........ 2

1. Contributory Infringement ........ 2

2. Inducement ........ 4

B. TVS's Validity Defense Fails as a Matter of Law ........ 6

1. Anticipation ........ 6

2. Obviousness ........ 7

II. OTHER PRELIMINARY INJUNCTION FACTORS ........ 8

A. Irreparable Harm ........ 8

B. Balance of Hardships ........ 9

C. Public Interest ........ 10

III. CONCLUSION ........ 11

Although it opposes Diomed's motion for a preliminary injunction (D.I. 47),[1] TVS does not dispute the central facts establishing that Diomed is likely to prevail on the merits. For example, TVS admits that it markets both bare-tipped laser fibers and "procedure packs" containing the items needed to practice the patented intraluminal laser ablation ("ILA") procedure, and that it even bundles the bare-tipped fibers and procedure packs together for a single price. TVS does not deny that these are the very same products found by the jury to infringe when sold by AngioDynamics and VSI. Likewise, TVS admits that it sells these products to the same physicians (e.g., vascular surgeons and interventional radiologists) and through the same channels of trade as AngioDynamics and VSI. Indeed, TVS cannot point to a single example of a physician buying laser fibers from TVS for any purpose other than ILA.

Further, TVS does not contest that it has:

(1) targeted Diomed, AngioDynamics, and VSI-trained physicians;

(2) sold products to those physicians for performing ILA with the intention that they would continue to perform the procedure exactly as Diomed, AngioDynamics, or VSI had trained them; and

(3) continued to sell such products even after the physicians' use of the products was found to directly infringe Diomed's '777 patent.

These undisputed facts establish that Diomed is not only likely, but virtually certain, to succeed in proving infringement by TVS, just as it succeeded against AngioDynamics and VSI.

TVS's fallback position is an invalidity argument based on a prior art reference (the "Puglisi" article) that this Court already explicitly considered and rejected in granting Diomed's motion for summary judgment that the '777 patent is valid and enforceable. Diomed, Inc. v. AngioDynamics, Inc., 450 F. Supp. 2d 130, 142 (D. Mass. 2006) (rejecting defendants' invalidity argument based on Puglisi).

---

[1] "Br." refers to Diomed's opening brief (D.I. 48). "Opp." refers to TVS's opposition (D.I. 59).

In its approach to the remaining preliminary injunction factors, TVS mischaracterizes the law – suggesting, for example, that the presence of other infringers in the market precludes injunctive relief against TVS. Yet the Federal Circuit has held directly to the contrary, namely that the mere presence of other infringers does <u>not</u> preclude entry of a preliminary injunction.

Moreover, TVS's brief proceeds on the incorrect assumption that Diomed must make a "heightened showing" on each of the four preliminary injunction factors because it supposedly seeks to alter the "status quo." (Opp. at 7) To the contrary, "a preliminary injunction <u>preserves</u> the status quo if it prevents future trespasses" while leaving past infringement for trial. <u>Atlas Powder Co. v. Ireco Chems.</u>, 773 F.2d 1230, 1232 (Fed. Cir. 1985 ) (emphasis added). This is exactly what the requested injunction would do here. Indeed, in <u>Atlas</u> the Federal Circuit specifically rejected the "heightened showing" standard urged by TVS. <u>Id.</u> at 1231 (calling the argument a "prime example of the misuse of short quotations taken out of context").[2]

## I.  LIKELIHOOD OF SUCCESS ON THE MERITS

### A.  <u>The Undisputed Facts Establish Infringement</u>.

#### 1.  <u>Contributory Infringement</u>

As noted above, TVS does not contest that it bundles together components that are, in the aggregate, no different from the "kits" at issue in the AngioDynamics and VSI trial. TVS even quotes a single price for the bare-tipped laser fibers and procedure packs, and likens these products to those sold by Diomed. (Wylie Decl. Exs. H, I; Steenburg Decl. Ex. O).

---

[2] The preliminary injunction standard in patent cases is no different than that for any other matter. E.g., <u>H.H. Robertson, Co. v. United Steel Deck, Inc.</u>, 820 F.2d 384, 387 (Fed. Cir. 1987); <u>Atlas Powder Co.</u>, 773 F.2d at 1233. TVS cites older cases articulating a now-rejected view that the preliminary injunction standard in patent cases should be "unusually stringent." <u>Smith Int'l, Inc. v. Hughes Tool Co.</u>, 718 F.2d 1573, 1578 (Fed. Cir. 1983).

- 2 -

TVS does seem to imply (Opp. at 8 n.4), that its sales avoid contributory infringement because it disaggregates the standard Diomed kit, taking the bare-tipped laser fiber out of the box and selling it under a separate SKU number. TVS, however, cites no authority for that proposition, which would gut the entire concept of contributory infringement.[3]

To the contrary, because the TVS products at issue have no substantial use other than in the patented ILA procedure, their sale plainly constitutes contributory infringement under 35 U.S.C. § 271(c). Even now, TVS ("Total Vein Solutions") is unable to offer any evidence that its customers purchase the products at issue for uses other than vein treatment (notwithstanding speculation (Opp. at 12) about "urology, plastic surgery," etc.). TVS has no evidence that doctors use its kits for any other procedure apart from ILA. The hypothetical possibility that a doctor could purchase bare-tipped laser fibers from TVS and use them for another purpose does not allow TVS to escape liability for the actual infringing ILA procedures that are occurring. Mentor H/S, Inc. v. Medical Devices Alliance, Inc., 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reversing district court and reinstating verdict of contributory infringement; record did "not indicate any actual uses" of the accused products other than in the claimed method).

TVS raises the possibility that physicians could purchase TVS procedure packs and use them with laser fibers that differ in some way from the standard bare-tipped fibers that the jury considered during the recent trial (and that TVS itself continues to sell). (Opp. at 9-11). This suggestion is speculation; it does not represent any substantial portion of TVS's actual sales. TVS cites testimony from just two of its customers (out of hundreds). (Dimas Decl. Exs. U, V).

---

[3] Even when selling the fibers "separately" from the procedure packs for different prices, the two are bundled for all practical purposes – they are advertised together, and physicians buy both from TVS. Tellingly, TVS continues to stonewall Diomed's request for discovery that would document more precisely the extent of this "informal" bundling. Diomed's motion to compel on this issue is currently pending before Magistrate Judge Alexander.

Cf. Mendenhall v. Astec Indus., 13 U.S.P.Q.2d 1913, 1954 (E.D. Tenn. 1988) (finding contributory judgment despite three alleged instances of noninfringing uses).[4]

Moreover, even if such sales did occur frequently enough to be considered in the contributory infringement analysis – although there is no such evidence here – they are still irrelevant given that most of TVS's procedure packs are sold to customers who also purchase standard bare-tipped laser fibers from TVS.[5] By indisputably selling bundled ILA supplies identical to those already found to infringe, TVS contributorily infringes the '777 patent.

### 2. Inducement

TVS's opposition skirts the core of Diomed's inducement case – that TVS prospers in the market as a result of waiting for "full-service" companies like Diomed, AngioDynamics, and VSI to train physicians to perform ILA procedures, then stepping in and emphasizing to such physicians that they can use TVS products while otherwise doing exactly what they have already been taught to do. The jury in the AngioDynamics and VSI case concluded that physicians following such training directly infringe Diomed's patent. Despite this verdict, TVS continues to sell the core devices needed for ILA to the same direct infringers, and to target ILA practitioners. With AngioDynamics and VSI having recently been enjoined from infringing, it would undermine that victory for TVS to be allowed to step into that vacuum and infringe in their place.

TVS's sales and marketing activities constitute inducement to infringe. Diomed has cited abundant evidence that TVS encourages and intends Diomed, AngioDynamics, and VSI-trained doctors to perform ILA using TVS products in the universally-practiced, infringing manner (e.g., including tumescent anesthesia to achieve tip-vein wall contact). (Br. at 11-12).

---

[4] In any event, Diomed does not concede that the non-standard fibers are non-infringing.

[5] To be clear, TVS does not sell the non-standard fibers referred to in its brief.

- 4 -

TVS does not deny that it targets the same customer base as Diomed, going so far as to use Diomed's (and the recently-adjudicated infringers') names and trademarks in its ad campaigns. In particular, TVS uses the terms "Diomed," "AngioDynamics," "EVLT," and "ELVeS." (Br. at 11). Cf. Symbol Techs., Inc. v. Opticon, Inc., 1990 WL 58887, *20 (S.D.N.Y. May 3, 1990) (finding inducement based on advertisements referencing plaintiff's products).

Moreover, TVS has continued to sell its products following the verdict despite having previously acknowledged that Diomed's suits against AngioDynamics and VSI shared "common disputed issues of fact" with the present litigation and that the "direct infringement issues" here would be resolved during the earlier trial. (D.I. 39 at 1, 5-6). For all sales of fibers and procedure packs to Diomed, AngioDynamics, or VSI-trained physicians following the verdict of infringement, TVS obviously "knew or should have known" that the transactions were bringing about acts of direct infringement. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006). Yet TVS has made no effort whatsoever to modify its product line as a result of the verdict – for example, by switching to other devices not already adjudicated to infringe. On the contrary, TVS has redoubled its efforts to promote its existing products, including standard bare-tipped fibers identical to those that the jury found to infringe. (Wylie Decl. ¶¶ 7-8). Nor, apparently, did TVS even seek an opinion of counsel. Cf. DSU, 471 F.3d at 1307 (affirming verdict of non-infringement and citing opinions concluding that defendants' products did not infringe).[6]

---

[6] TVS's owner baldly states that he – not his lawyers – has reviewed the trial transcripts and disagrees with the jury's verdict even while professing to "respect" it. (Opp. at 14-15). Method patents would be all but worthless if an alleged infringer could ignore compelling evidence and a jury verdict and rely on conclusory statements by lay executives to escape liability for inducement.

- 5 -

### B. TVS's Validity Defense Fails as a Matter of Law.

In challenging the validity of Diomed's patent, TVS simply rehashes an argument already expressly rejected by this Court. TVS relies on a reference – the 1989 Puglisi article – that the Court considered in August 2006 when granting Diomed's motion for summary judgment on the invalidity defenses advanced by AngioDynamics and VSI.

#### 1. Anticipation

This Court has already concluded that Puglisi does not disclose a key limitation of the '777 patent claims – use of a bare-tipped laser fiber whose tip contacts the vein wall during treatment. Diomed, 450 F. Supp. 2d at 142 (noting that the Puglisi article makes "no explicit reference to the nature of the fiber optic tip," and that Puglisi himself testified at deposition that his article described a procedure using a covered tip).

TVS argues that because Puglisi purports to describe "successful" laser procedures, claim 9 of Diomed's patent is "_now_ anticipated" in view of Diomed's statements during trial that contact is required for effective ILA procedures. (Opp. at 15). The argument is fatally flawed.

First, nothing in the article indicates how Dr. Puglisi defined a "successful" procedure, let alone that any such result was due to the use of laser energy. The treatment described in the article included the then-conventional venous ligation, _combined with_ laser treatment of the vein below the point of ligation. (July 5, 2007 Navarro Decl. ¶ 2). Ligation alone may have sufficed to treat the varicose vein; nothing in the article rules this out and links the results to the use of laser energy below the point of ligation. (Id.).

In any event, even assuming that the use of laser energy in the procedures performed by Puglisi was responsible for the results he reported, nothing in the article amounts to evidence (let alone clear and convincing evidence) that the procedure was in fact effective over the long term.

- 6 -

On the contrary, Puglisi merely notes the "absence of blood" immediately after treatment and describes how this eliminates certain "post-operative" problems. (Dimas Decl. Ex. AA at 841). This passage describes the nature of the vein immediately following the procedure; Puglisi says nothing about long-term results.[7] (July 5, 2007 Navarro Decl. ¶ 3).

### 2. Obviousness

TVS also argues that claim 9 of Diomed's patent is obvious in view of the Puglisi article when combined with one of several references disclosing the use of tumescent anesthesia, since tumescent anesthesia causes compression of the vein wall into contact with the fiber as Diomed established at trial. Again, the Court has already rejected this theory in its August 2006 ruling, and in any event the argument fails as a matter of law.

First, as this Court has already recognized, Puglisi himself testified that his article described a procedure using a covered fiber tip (not a bare tip). Diomed, 450 F. Supp. 2d at 142. Thus, even if the combination suggested by TVS were proper, any contact between the fiber and the vein would not involve a laser-emitting section of the bare fiber as required by the patent.

---

[7] Diomed has explained throughout the '777 litigation that contact of the fiber tip with the vein wall during ILA is required for reliable long-term results even though other methods may appear successful for some brief period of time following treatment. The very trial transcript passage that TVS cites (Opp. at 16) includes an explanation by Diomed's counsel that:

> The evidence will show that if you don't have that contact between the fiber tip and the vein wall during laser treatment, you won't get an effective laser treatment. You might get a little blood clot which may block the vein temporarily, but it won't seal the vein off and bring about a long-term cure of the varicose vein problem.

(Dimas Decl. Ex. BB at 128) (emphasis added). If TVS is asking the Court to speculate that the Puglisi technique may have yielded satisfactory long-term results, that request is improper as anticipation by inherency "may not be established by probabilities or possibilities." In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999).

Second, the burden is on TVS to show that a person of ordinary skill in the art would have understood in early 1999 (when the '777 patent was filed) that using tumescent anesthesia in connection with the procedure described by Puglisi <u>would bring about actual tip-wall contact</u>. <u>See</u> <u>In re Rijckaert</u>, 9 F.3d 1531, 1533-34 (Fed. Cir. 1993) ("Obviousness cannot be predicated on what is unknown."); <u>Manual of Patent Examining Procedure</u> (8th ed.) § 2141.02 ("Obviousness cannot be predicated on what is not known at the time an invention is made, even if the inherency of a certain feature is later established."); <u>Kloster Speedsteel AB v. Crucible Inc.</u>, 793 F.2d 1565, 1576 (Fed. Cir. 1986) (Because "inherency and obviousness are distinct concepts," the defendants' obviousness theory failed; it failed to show that the "inherency would have been obvious to those skilled in the art"), <u>overruled on other grounds by</u> <u>Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp</u>, 383 F.3d 1337 (Fed. Cir. 2004) (en banc).

TVS does not even attempt to establish that one of skill in the art would have appreciated in early 1999 that the use of tumescent anesthesia would compress the vein so substantially that it would result in contact of the fiber tip and the vein wall. Nor could TVS possibly show this; the invention of the '777 patent was path-breaking precisely because people of ordinary skill in the art did <u>not</u> previously appreciate the role and importance of contact in ILA treatment.

## II.    OTHER PRELIMINARY INJUNCTION FACTORS

TVS's narrow view of when a preliminary injunction is appropriate in a patent case is contrary to the black-letter law of the Federal Circuit.

### A.    **Irreparable Harm**

In arguing that Diomed is not facing irreparable harm from TVS's aggressive infringement, TVS points out that other infringers exist in the market and speculates that an injunction may result in the transfer of sales from TVS to other infringers, rather than to Diomed.

Such speculation is beside the point because "the fact that other infringers may be in the marketplace does not negate irreparable harm." Pfizer, Inc. v. Teva Pharms., USA, Inc., 429 F.3d 1364, 1381 (Fed. Cir. 2005).

In any event, TVS is in a completely different category from the other so-called "low-cost suppliers" to which it refers. An independent research group even deemed TVS "the most significant generic competitor" in the ILA market. (Steenburg Decl. Ex. P). Moreover, TVS is aggressively seeking to capitalize on Diomed's victory against AngioDynamics and VSI. (Br. at 15).[8] Diomed is entitled to pursue its case against TVS without having to sue every infringer in the market, no matter how small or insignificant. (Br. at 16).

Finally, TVS makes no effort to rebut the presumption of irreparable harm to which Diomed is entitled given its strong showing of likelihood of success on the merits. (Br. at 18). TVS's only response at all is to suggest (Opp. at 18) that the Supreme Court's decision in eBay, Inc. v. MercExchange, LLC, 126 S. Ct. 1837 (2006) makes such inferences inappropriate. But eBay did not change that presumption; indeed, courts have continued to apply it. E.g., Christiana Indus. v. Empire Elecs., Inc., 443 F. Supp. 2d 870, 884 (E.D. Mich. 2006).

B.   **Balance of Hardships**

While asserting that Diomed's requested relief would "destroy" TVS's business (Opp. at 19), TVS never addresses Diomed's explanation (Br. at 19) of how TVS entered the ILA market despite having actual knowledge of the '777 patent and taking a "calculated risk" that it would infringe – an important consideration in the balance of hardships analysis.

---

[8] TVS argues that the defendants in the earlier trial remain in the marketplace despite the jury verdict. (Opp. at 3). But the Court has now enjoined them from selling infringing fibers. TVS should not have the right to step in and make such sales in their place.

Moreover, Diomed's strong showing on the other preliminary injunction factors would justify the requested relief even if the balance of hardships did somehow tip in TVS's favor. <u>Bell & Howell Document Management Prods. Co. v. Altek Sys.</u>, 132 F.3d 701, 708 (Fed. Cir. 1997) (vacating denial of preliminary injunction: "[T]he fact that Keystone is 'small' and could be put out of business if a preliminary injunction issues does not insulate it from the issuance of a preliminary injunction if the other three preliminary injunction factors are sufficient to tip the scales in Bell & Howell's favor.").

### C.  Public Interest

Ignoring the public interest in the enforcement of valid patent rights (Br. at 20), TVS emphasizes the importance of maintaining "physician preferences" even though Diomed's proposed injunction would in no way limit the medical devices available to physicians performing ILA. As established at the recent trial, Diomed has more than enough capacity to serve the entire market. (Wylie Decl. ¶ 17).

The <u>Datascope</u> case cited by TVS stands for the unremarkable proposition that injunctive relief may be inappropriate if it would deny doctors access to <u>products that are medically superior to other available alternatives</u>. <u>Datascope Corp. v. Kontron, Inc.</u>, 611 F. Supp. 889, 891 (D. Mass. 1985). Here, by contrast, TVS cannot and does not make any such claim – rather, it offers only vague references to its "customer service," along with a declaration from a clinic's chief financial officer – not a physician – explaining that Diomed kits include components that the clinic's doctor would not use during ILA. (Dimas Decl. Ex. FF). In other words, the clinic would prefer not to pay for supplies that it does not use. This is a purely economic argument, and the law is clear that potentially higher prices for patented products do not justify denying injunctive relief, even in the case of drugs or other medical products. <u>Pfizer</u>, 429 F.3d at 1382.

Once again, TVS's arguments would open the door for any infringer to remain in the medical marketplace so long as it undercuts the patentee on price and offers customer service that certain doctors consider superior. This is not (and could not be) the law.

## III. CONCLUSION

For the above reasons, Diomed's motion for a preliminary injunction should be granted.[9]

<div style="text-align: right">
Respectfully submitted,

DIOMED, INC.,

By its attorneys,
</div>

Dated: July 5, 2007

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO #646990
mrader@wolfgreenfield.com
John L. Strand (BBO #654985)
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
Fax: (617) 646-8646

---

[9] After fully briefing its opposition to the preliminary injunction motion, TVS requests the opportunity to submit yet further "evidence and argument" at a later time. Given the irreparable harm that Diomed faces from TVS's aggressive attempts to divert market share in the wake of the verdict against AngioDynamics and VSI, the request should be denied. To be clear, Diomed already agreed to a one-week extension of TVS's deadline to oppose the preliminary injunction motion, giving TVS three weeks to prepare and file its brief. Further belated submissions by TVS would be inappropriate, particularly when TVS has stonewalled this case at every stage, even denying Diomed basic discovery to which it <u>admits</u> Diomed is entitled. (D.I. 39 at 7; D.I. 46 at 9).

## **CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                         /s/ Michael A. Albert