IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>TOTAL VEIN SOLUTIONS, LLC,<br><br>        Defendant. | CIVIL ACTION NO. 04-CV-10686 NMG<br><br>**LEAVE TO FILE GRANTED<br>ON AUGUST 20, 2007** |

# REPLY IN SUPPORT OF PLAINTIFF'S
# MOTION FOR A PRELIMINARY INJUNCTION

Dated: <u>August 22, 2007</u>

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

COUNSEL FOR
PLAINTIFF DIOMED, INC.

# **TABLE OF CONTENTS**

I. LIKELIHOOD OF SUCCESS ON THE MERITS ...........................................................................1

    A. The Undisputed Facts Establish Infringement ...........................................................1

        1. Contributory Infringement ...............................................................................1

        2. Inducement .......................................................................................................3

    B. TVS's Validity Defense Fails as a Matter of Law .....................................................3

        1. Anticipation ......................................................................................................3

        2. Obviousness .....................................................................................................4

II. OTHER PRELIMINARY INJUNCTION FACTORS .........................................................5

    A. Irreparable Harm ........................................................................................................5

    B. Balance of Hardships .................................................................................................5

    C. Public Interest ............................................................................................................5

III. CONCLUSION .................................................................................................................5

TVS does not dispute the central facts establishing that Diomed is likely to prevail. TVS admits that it sells bare-tipped laser fibers and "procedure packs" with the items needed to practice the patented intraluminal laser ablation ("ILA") procedure, and that it even bundles the fibers and procedure packs together for a single price. TVS admits that these are the very same products found by the jury to infringe, and that it sells these products to the same physicians and through the same channels of trade as AngioDynamics and VSI. Indeed, TVS cannot point to a single example of a physician buying laser fibers from TVS for any purpose other than ILA.

These undisputed facts establish that Diomed is not only likely, but virtually certain, to succeed in proving infringement by TVS, just as it succeeded against AngioDynamics and VSI.

As a fallback, TVS argues invalidity based on a prior art reference (the Puglisi article) that this Court already expressly considered and rejected in granting summary judgment for Diomed. Diomed, Inc. v. AngioDynamics, Inc., 450 F. Supp. 2d 130, 142 (D. Mass. 2006).

TVS's brief also proceeds on the incorrect assumption that Diomed must make a "heightened showing" on the preliminary injunction factors because it supposedly seeks to alter the "status quo." (Opp. at 7).[1] To the contrary, "a preliminary injunction <u>preserves</u> the status quo if it prevents future trespasses." Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1232 (Fed. Cir. 1985 ) (emphasis added). This is exactly what the requested injunction would do here. Indeed, Atlas specifically rejected the "heightened showing" standard urged by TVS. Id. at 1231.

I.     **LIKELIHOOD OF SUCCESS ON THE MERITS**

    A.     **The Undisputed Facts Establish Infringement.**

        **1. Contributory Infringement.** TVS admits that it bundles together components no different from the "kits" at issue in the AngioDynamics and VSI trial. TVS even quotes a single price for the bare-tipped laser fibers and procedure packs, and likens these products to those sold by Diomed. (Wylie Decl. Exs. H, I; Steenburg Decl. Ex. O).

---

[1] "Br." refers to Diomed's opening brief (D.I. 48). "Opp." refers to TVS's opposition (D.I. 59).

TVS insinuates (Opp. at 8 n.4) that its sales avoid contributory infringement because it disaggregates the kit components, taking the bare-tipped laser fiber out of the box and selling it under a separate SKU number. But TVS cites no authority for the theory that taking the pieces out avoids infringement – a theory that would gut the principle of contributory infringement.[2]

To the contrary, because the TVS products have no substantial use other than in the patented ILA procedure, their sale plainly constitutes contributory infringement under 35 U.S.C. § 271(c). Calling itself "Total Vein Solutions," TVS plainly targets the vein treatment market. It offers no evidence that its customers purchase the products for any use other than vein treatment. Its speculation (Opp. at 12) about "urology, plastic surgery" or other hypothetical uses is groundless and irrelevant. The law is clear that hypothetical uses for noninfringing purposes do not allow TVS to escape liability for the actual infringing ILA procedures. Mentor H/S, Inc. v. Medical Devices Alliance, Inc., 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reinstating verdict of contributory infringement where the record did "not indicate any actual uses" of the accused products other than in the claimed method).

Although TVS sells the exact same bare-tipped fibers found to be infringing at trial, TVS now hypothesizes that physicians could buy TVS procedure packs and use them with different fibers. (Opp. at 9-11). This suggestion is pure speculation. TVS does not sell any different fibers,[3] and even if it could show a handful of variant uses that would not avoid infringement. Cf. Mendenhall v. Astec Indus., 13 U.S.P.Q.2d 1913, 1954 (E.D. Tenn. 1988) (finding contributory infringement despite three instances of noninfringing uses). By selling ILA supplies identical to those found to infringe, TVS contributorily infringes the '777 patent.

---

[2] Even when selling the fibers "separately" from the procedure packs for different prices, the two are bundled for all practical purposes – they are advertised together, and physicians buy both together from TVS at the same time, in the same order form.

[3] Even if it did, there has been no showing that such fibers would be noninfringing.

- 2 -

**2. Inducement.**  TVS does not deny that it targets the same customer base as Diomed, even using Diomed's (and other competitors') names and trademarks in its ad campaigns. (Br. at 11). Cf. Symbol Techs., Inc. v. Opticon, Inc., 1990 WL 58887, *20 (S.D.N.Y. May 3, 1990) (finding inducement based on advertisements referencing plaintiff's products).

TVS has admitted that Diomed's suits against AngioDynamics and VSI shared "common disputed issues of fact" with the TVS case, and that the "direct infringement issues" here would be resolved during the earlier trial. (D.I. 39 at 1, 5-6).  They have been.  Following that infringement verdict (which TVS monitored closely, with its counsel present in the courtroom during trial), TVS obviously "knew or should have known" that its sales were bringing about acts of direct infringement. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006). Yet TVS continues promoting and selling the same products (Wylie Decl. ¶¶ 7-8), apparently without even seeking an opinion of counsel (Opp. at 14-15). Cf. DSU, 471 F.3d at 1307.  With AngioDynamics and VSI having recently been enjoined from infringing, it would undermine that victory for TVS to be allowed to step into that vacuum and infringe in their place.

**B.   TVS's Validity Defense Fails as a Matter of Law.**

**1. Anticipation.**  In attacking the validity of Diomed's patent, TVS relies on the same 1989 Puglisi article which this Court already concluded – on summary judgment – does not invalidate. Diomed, 450 F. Supp. 2d at 142 (holding that Puglisi fails to disclose a key limitation of the '777 patent claims, namely contact between a bare-tipped laser fiber tip and the vein wall).

TVS argues that because Puglisi purports to describe "successful" laser procedures, he must have had contact since contact is required for effective ILA procedures. (Opp. at 15).  The argument is fatally flawed.  First, nothing in the article indicates that Dr. Puglisi's success was due to the use of laser energy.  His treatment included the then-conventional method of ligating the vein at the groin, to which he added laser treatment below the point of ligation. (July 5, 2007 Navarro Decl. ¶ 2).  The ligation alone (not application of laser energy) may have sufficed. (Id.).

- 3 -

Moreover the vague term "successful" offers no evidence (let alone clear and convincing evidence) that the procedure was effective over the long term.[4] (July 5, 2007 Navarro Decl. ¶ 3).

        **2. Obviousness.**  TVS also argues that claim 9 of Diomed's patent is obvious in view of the Puglisi article when combined with references disclosing the use of tumescent anesthesia, since tumescent anesthesia causes compression of the vein wall into contact with the fiber as Diomed established at trial. Again, the Court has already rejected this theory in its August 2006 summary judgment ruling. In any event, the argument fails as a matter of law.

    First, as this Court has already noted, Puglisi himself testified that his article described a procedure using a covered fiber tip (<u>not</u> a bare tip). <u>Diomed</u>, 450 F. Supp. 2d at 142. Thus, any contact he may have had between the fiber and the vein would not involve a laser-emitting section of the <u>bare</u> fiber as required by the patent.

    Second, for obviousness TVS would need to show by clear and convincing evidence that one of ordinary skill in the art would have <u>known</u> in early 1999 (when the patent was filed) that using tumescent anesthesia with Puglisi's method would bring about tip-wall contact. <u>In re Rijckaert</u>, 9 F.3d 1531, 1533-34 (Fed. Cir. 1993) ("Obviousness cannot be predicated on what is unknown."); <u>Manual of Patent Examining Procedure</u> (8th ed.) § 2141.02 ("Obviousness cannot be predicated on what is not known at the time an invention is made, even if the inherency of a certain feature is later established."). TVS does not even try to show this. Indeed, the '777 patent was path-breaking precisely because those of ordinary skill did <u>not</u> previously appreciate the role of contact.

---

[4] Diomed has consistently explained that contact of the fiber tip with the vein wall is critical for reliable <u>long-term</u> results. The very trial transcript passage that TVS cites (Opp. at 16) includes an explanation that "if you don't have that contact between the fiber tip and the vein wall during laser treatment, you won't get an effective laser treatment … it won't seal the vein off and bring about a <u>long-term</u> cure." (Dimas Decl. Ex. BB at 128) (emphasis added). If TVS is asking the Court to speculate that the Puglisi technique <u>may</u> have yielded satisfactory long-term results, that request is improper as anticipation by inherency "may not be established by probabilities or possibilities." <u>In re Robertson</u>, 169 F.3d 743, 745 (Fed. Cir. 1999).

- 4 -

## II. OTHER PRELIMINARY INJUNCTION FACTORS

**A. Irreparable Harm.**  TVS's speculation that an injunction may result in the transfer of sales from TVS to other infringers, rather than to Diomed, is legally irrelevant because "the fact that other infringers may be in the marketplace does not negate irreparable harm." Pfizer, Inc. v. Teva Pharms., USA, Inc., 429 F.3d 1364, 1381 (Fed. Cir. 2005).

**B. Balance of Hardships.**  Diomed's strong showing on the other preliminary injunction factors would justify the requested relief even if TVS could show significant hardship. Bell & Howell Document Management Prods. Co. v. Altek Sys., 132 F.3d 701, 708 (Fed. Cir. 1997).

**C. Public Interest.**  TVS ignores the public interest favoring enforcement of a valid patent.  Instead it argues for maintaining "physician preferences." (Br. at 20).  But an injunction would in no way limit the medical devices available to physicians performing ILA, as Diomed has more than enough capacity to serve the entire market. (Wylie Decl. ¶ 17).

## III. CONCLUSION

For the above reasons, Diomed's motion for a preliminary injunction should be granted.

Respectfully submitted,

DIOMED, INC.,

By its attorneys,

Dated: August 22, 2007

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO #646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
Fax: (617) 646-8646

- 6 -

**CERTIFICATE OF SERVICE**

     I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                           /s/ Michael A. Albert