IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOTAL VEIN SOLUTIONS, LLC, <br><br> Defendant. | Civil Action No. 04-CV-10686-NMG <br><br> **PUBLIC VERSION – CONFIDENTIAL MATERIAL REDACTED** |

### MEMORANDUM OF LAW IN SUPPORT OF DIOMED'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT BY ADDING DAVID S. CENTANNI AND TYRELL L. SCHIEK AS DEFENDANTS

The law is clear that individuals who infringe patents are just as liable as the companies for whom they happen to work. While patentees often choose to sue corporate infringers, in this case TVS's owners and operators, David Centanni and Tyrell Schiek, left Diomed with no choice but to assert its '777 patent against them for their own individual acts of infringement.

Mr. Centanni and Ms. Schiek made a strategic choice to put TVS under bankruptcy protection on the afternoon of January 17, 2008, literally on the eve of the January 18 hearing that this Court had scheduled on Diomed's motion for a preliminary injunction (D.I. 47). The bankruptcy filing, by a defendant that claims to have assets outstripping its liabilities (Ex. A p. 1),[1] and which distributed to its two co-owners (Mr. Centanni and Ms. Schiek) a total of approximately **$1 million** in 2007 (Ex. B pp. 4-5), was made for one purpose only – to frustrate Diomed's ability to stop TVS's infringement of Diomed's '777 patent, and to prevent Diomed from collecting the damages that it is owed for TVS's past infringement. TVS's disingenuous bankruptcy filing made it vital that its owners' individual infringement be stopped.

---

[1] All exhibits are to the accompanying declaration of Charles T. Steenburg.

TVS admits that the infringement issues in this case are identical to those decided in Diomed's favor by the jury at trial last Spring. (D.I. 39 at 1, 5-6). This Court previously granted summary judgment that the '777 patent is valid and enforceable. Diomed v. AngioDynamics, 450 F. Supp. 2d 130 (D. Mass. 2006). Faced with the prospect of a preliminary injunction in light of its own admissions and the Court's earlier rulings, TVS divested this Court's jurisdiction over the corporate defendant by filing for bankruptcy. Mr. Centanni and Ms. Schiek, the sole owners of TVS, who personally direct and engage actively in its infringing activities, are legally responsible for their own conduct. They should not be allowed to continue infringing at Diomed's expense.

Notably, adding Mr. Centanni and Ms. Schiek as co-defendants alongside TVS is not a matter of piercing the corporate veil,[2] but rather a necessary step to hold them responsible for their own actions inducing infringement of Diomed's patent. As discussed below, vein piercing would be relevant only if Mr. Centanni and Ms. Schiek were being held liable, due to their status as corporate officers, for the acts of others under their employ. No such legal theory is needed when, as here, Diomed simply seeks to hold them liable for their own individual infringing acts.

I. **LEGAL STANDARDS**

    A. **Leave to Amend Is Freely Granted.**

Under Fed. R. Civ. P. 15(a), leave to amend a complaint "shall be freely given when justice so requires" absent egregious circumstances such as bad faith. U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733-34 (1st Cir. 2007) (vacating dismissal of case and noting that Rule 15(a)

---

[2] Judge Stearns denied a motion to add Mr. Centanni and Ms. Schiek early in the case, prior to the onset of serious discovery and long before TVS filed its bankruptcy petition. Judge Stearns' order referenced a decision declining to pierce the corporate veil, see June 29, 2005 Electronic Order (citing Birbara v. Locke, 99 F.3d 1233, 1238 (1st Cir. 1996)), but veil piercing is not before the Court today.

embodies a "liberal amendment policy"; citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The Supreme Court has stressed that the "joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

>  **B.    Corporate Officers Are Individually Liable For Their Own Infringement *Without* Piercing the Corporate Veil.**

As the Federal Circuit has repeatedly emphasized, "it is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer." Insituform Techs., Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1375 (Fed. Cir. 2004) (emphasis added) (quoting Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1579 (Fed. Cir. 1986)); see also Fromson v. Citiplate, Inc., 886 F.2d 1300, 1304 (Fed. Cir. 1989) ("The cases are legion holding corporate officers and directors personally liable for participating in, inducing, and approving acts of patent infringement by a corporation."); Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 938 (1st Cir. 1985) ("It is settled that a corporate officer who commits a tort is personally liable for his actions and cannot seek refuge in the fact that he was acting for the corporation.").

In other words, "piercing the corporate veil … is not the only method" of holding an individual corporate executive liable for patent infringement resulting from his or her own acts. Randolph-Rand Corp. of New York v. Tidy Handbags, Inc., 2001 WL 1286989, *6 (S.D.N.Y. Oct. 24, 2001) (emphasis added).   A patentee need only establish the individual's intent to cause the infringement. Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368, 1377-78 (Fed. Cir. 2005) (affirming jury verdict against individual defendant whose "overall acts of directing [the] business model caused the infringement"); Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1575–76 (Fed. Cir. 1996) (affirming verdict against the founder, owner, and president of the corporate defendant).

Accordingly, courts routinely grant patentees leave to amend complaints to add infringement claims against directors and officers in their personal capacities, where those individuals' own conduct is at issue in the infringement case. E.g., Yamashita v. Wilbur-Ellis Co., 2006 WL 2038301 (N.D. Cal. July 19, 2006); Westell Techs., Inc. v. HyperEdge Corp., 2003 WL 22088039, *2 (N.D. Ill. Sept. 8, 2003) (allowing amendment of complaint to "seek[] relief from … Swartwood [the corporate defendant's president] based on the same allegations surrounding the alleged patent infringement and the same accused products.").

The addition of individual defendants is appropriate whenever evidence is available that their individual acts led to infringement. In Fromson, for example, the Federal Circuit affirmed the district court's grant of leave to amend the complaint to add individual defendants to a patent infringement complaint even following a trial on the merits, after the corporate defendant declared bankruptcy in the face of a multi-million dollar judgment. The individual defendants had defeated an earlier joinder motion by representing that the company was in sound financial condition and capable of responding in damages. Fromson, 886 F.2d at 1301, 1304.

## II.   ARGUMENT

### A.   Diomed's Proposed Amended Complaint Properly Pleads Inducement Claims Against Mr. Centanni and Ms. Schiek.

Diomed's proposed amended complaint properly states a cause of action against Mr. Centanni and Ms. Schiek because they personally promote the products (including bare-tipped laser fibers) that TVS customers use to infringe Diomed's patent. In other words, Mr. Centanni and Ms. Schiek themselves conduct the very activities underlying Diomed's motion for a preliminary injunction. (D.I. 47).

For example, they promote their merchandise at trade shows popular among endovenous laser users. Exhibit C is a video of Mr. Centanni and Ms. Schiek personally selling their infringing products at a meeting of the American College of Phlebology (ACP), a large conference that focuses heavily on the patented endovenous laser ablation procedure.[3]

In the video, Mr. Centanni encourages physicians to "buy from Total Vein." (0:35).[4] Mr. Centanni emphasizes that his products were "designed for vein surgery success." (0:46). Ms. Schiek displays various TVS products – including procedure packs for performing endovenous laser ablation – and reflects on the opportunity that the ACP conference offers to "see all our customers." (0:52).

Deposition testimony from TVS employees confirms that Mr. Centanni and Ms. Schiek personally direct the company's day-to-day operations, including the marketing activities that lead doctors to purchase TVS products and violate Diomed's patent rights. Cf. Insituform, 385 F.3d at 1372-73, 1375 (president and sole shareholder had controlling authority over corporate defendant's day-to-day operations). For instance:

- Redacted

- Redacted

---

[3] The ACP is one of the professional meetings and trade shows addressed in Diomed's preliminary injunction papers. See Declaration of James Wylie (D.I. 52) ¶ 6.

[4] In opposing the original motion to amend before Judge Stearns, Mr. Centanni represented to the Court that he had "never represented TVS at a trade show." See Declaration of David S. Centanni (D.I. 10) ¶ 5. The video evidence confirms that, at least today, his representation is not accurate.

Redacted

Mr. Centanni and Ms. Schiek alone have orchestrated TVS's business model and continue to exercise complete control over TVS while the company has reaped millions in revenue. (Ex. B at 1). Cf. Fuji, 394 F.3d at 1377-78.  They personally sell infringing products.  They alone have the authority to discontinue sales. See Sensonics, 81 F.3d at 1575–76.  They can and should be held liable for their own infringing activities, separate and apart from the (allegedly bankrupt) corporate defendant's infringement.

> **B.     This Court Has Personal Jurisdiction Over Mr. Centanni and Ms. Schiek.**

This Court has personal jurisdiction over Mr. Centanni and Ms. Schiek because they have repeatedly reached into Massachusetts to commit patent infringement.  Under the state's long-arm statute, personal jurisdiction may stem from "activities undertaken in a corporate capacity without regard to whether the individual defendant is an 'alter ego' for the corporation." Yankee Group, Inc. v. Yamashita, 678 F. Supp. 20, 22 (D. Mass. 1988) (jurisdiction proper if the corporate officer "himself transacts business within the foreign state, whether or not the business is personal or solely on behalf of the corporation"); see also Trans Nat'l Travel, Inc. v. Sun Pac. Int'l, Inc., 10 F. Supp. 2d 79, 83 (D. Mass. 1998) (rejecting defendant's argument that contacts were immaterial because they came in his capacity as a corporate representative).  In other words, "veil piercing" is irrelevant to the personal jurisdiction inquiry.

It is beyond dispute that TVS's owners have personally carried out acts of infringement in the Commonwealth.  Indeed, TVS began selling the infringing products in Massachusetts at a time when Mr. Centanni and Ms. Schiek alone were responsible for sales.

As of December 2004, TVS did not identify any individuals other than its two owners who marketed the company's products. (Ex F). Redacted

---

[5] Diomed did not have this information when filing its motion for a preliminary injunction, let alone the original request to add Mr. Centanni and Ms. Schiek as defendants. Only after Judge Alexander granted Diomed's motion to compel in July 2007 (D.I. 66) did TVS produce detailed sales information as called for in Diomed's discovery requests.

- 7 -

### C. Now is a Particularly Suitable Time to Add Mr. Centanni and Ms. Schiek as Individual Defendants.

The bankruptcy petition that TVS filed on the eve of the scheduled preliminary injunction hearing confirms that now is a particularly appropriate time to add Mr. Centanni and Ms. Schiek as defendants. The situation here is strikingly similar to that in Fromson, where individual defendants had originally defeated a motion to amend on the strength of a claim that the corporation was in sound financial condition. When the company filed for bankruptcy after trial, the court granted the renewed motion to amend, and the Federal Circuit affirmed. Fromson, 886 F.2d at 1303-04.

Here, by the same token, TVS responded to Diomed's original motion for leave to amend by representing that (1) the company was well capitalized and in good standing; and (2) neither Centanni nor Schiek had ever commingled funds with it. (D.I. 10 at 12). Now, however, TVS has filed for bankruptcy and has admitted in its bankruptcy papers that Centanni and Schiek have collectively drawn almost a million dollars from TVS over the last year. (Ex. B at 4-5). Redacted

## Redacted

Now that the true story has emerged, the importance of the present motion has become even more clear. See Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litig., 750 F.Supp. 330, 336 (N.D. Ill. 1990) (Easterbrook, J.) (denying corporate executives' motion to dismiss patent infringement claim for lack of personal jurisdiction: "A rule that would allow the employees to remove assets from corporate solution (even for tax reasons) and then shield the employees from their personal liability for their own acts would go too far.").

Joinder is actually <u>more</u> appropriate here than in <u>Fromson</u> because the motion comes far earlier in the case. <u>Fromson</u> (and <u>Insituform</u>) added individual defendants after a judgment was already in place against the corporate defendant. In this case discovery is ongoing, and the matter is not yet scheduled for trial.[6] Adding Mr. Centanni and Ms. Schiek as parties at this stage would cause them no prejudice. Indeed, as the only principals and owners of TVS, they are already intimately familiar with the case and have a strong interest in its outcome.

## III.  CONCLUSION

For the above reasons, the Court should grant Diomed leave to file its proposed amended complaint naming David S. Centanni and Tyrell L. Schiek as individual defendants.

> Respectfully submitted,
>
> DIOMED, INC.,
>
> By its attorneys,

Dated: <u>February 19, 2008</u>

>    /s/ Michael N. Rader
> Michael A. Albert (BBO #558566)
> malbert@wolfgreenfield.com
> Michael N. Rader (BBO #646990)
> mrader@wolfgreenfield.com
> WOLF, GREENFIELD & SACKS, P.C.
> 600 Atlantic Avenue
> Boston, MA 02210
> (617) 646-8000

---

[6] TVS was historically a small player in the laser ablation market, and Diomed therefore focused its limited resources on larger competitors. <u>See</u> Wylie Declaration (D.I. 52) ¶ 4. <u>See</u> <u>Pfizer, Inc. v. Teva Pharms., USA, Inc.</u>, 429 F.3d 1364, 1381 (Fed. Cir. 2005) (affirming preliminary injunction: "A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed. Neither is first targeting infringers whose sales dwarf the sales of other infringers.")

**CERTIFICATE OF SERVICE**

  I certify that on February 19, 2008, true copies of the above document were served on counsel for TVS as indicated below:

| **Via First Class Mail & Electronic Mail** | **Via Hand Delivery & Electronic Mail** |
|---|---|
| Barden Todd Patterson<br>Henry M. Pogorzelski<br>Patterson & Sheridan, L.L.P.<br>3040 Post Oak Boulevard<br>Suite 1500<br>Houston, TX 77056<br>tpatterson@pattersonsheridan.com<br>hpogorzelski@pattersonsheridan.com | Merton E. Thompson<br>Anne C. Pareti<br>Burns & Levinson LLP<br>125 Summer Street<br>Boston, MA 02110<br>mthompson@burnslev.com<br>apareti@burnslev.com |

  I further certify that true copies were served by first class mail on David S. Centanni and Tyrell L. Schiek at the addresses below on February 1, 2008 pursuant to Fed. R. Civ. P. 5(b) and D. Mass. L.R. 15.1:

| **David Centanni** | **Tyri Schiek** |
|---|---|
| c/o Total Vein Solutions<br>901 Yale Street<br>Houston, TX  77008 | c/o Total Vein Solutions<br>901 Yale Street<br>Houston, TX  77008 |

             /s/ Michael N. Rader